## The Executors of MORTON *against* The Terre-tenants of CROGHAN.

Where a *SCIRE FACIAS* to revive a judgment recovered in *Octo-*
judgment cre- *ber*, 1770, in the Supreme Court of the then province of *New-*
ditor proceeds
to enforce his *York*, in favour of *John Morton* against *George Croghan,*
lien on real
estate, and it for 10,500 pounds of debt, and 8*l.* 4*s.* 3*d.* damages and
becomes ne-
cessary, for
that purpose, to revive the judgment, he must make all the *terre-tenants*, or persons having a
fee in the land, parties to the *scire facias*, in order that they may be compelled to contribute
jointly to the payment and satisfaction of the judgment.

If, in such case, some of the terre-tenants appear and plead, and others make default, and
the plaintiff enters a *nolle prosequi*, as to those who appeared and pleaded, and takes judgment
by default against the others, it is *a discontinuance* as to *all* the defendants; and he must pay
*costs*, as in a case of discontinuance. But it is otherwise, in actions of *tort*, where the plaintiff
has his election, to sue jointly, or severally : or in *assumpsit*, or *debt*, where one of the de-
fendants pleads matter of personal discharge, which does not go to the action of the writ, as
*bankruptcy* or *infancy.*

costs. In the year 1804, and after the death of both the
parties, the plaintiffs, as executors of *Morton*, revived the
judgment against the heirs of *Croghan*; and one thousand
dollars were made on an execution issued after such revival,
which execution, as to the residue, was returned *nulla bona*.
The judgment was, also, revived for the residue, by the
plaintiffs against the heirs, in 1809; and again, in 1813.
The present action was commenced in *December*, 1817, by
*scire facias*, to the sheriff of *New-York*, against the heirs
and terre-tenants of *Croghan*, which writ was returned *nihil*.
A *testatum scire facias* was then issued to *Otsego* county, to
which the sheriff returned, that he had summoned *G. W.*
*Prevost*, and three others, the heirs, and *Samuel Cooper*, and
fourteen others, (of whom *Abraham Hartwell* was one,) the
terre-tenants of said *George Croghan*, to be, &c. which
were all the heirs and tenants of said *George Croghan* in
his bailiwick. The heirs and terre-tenants appeared by their
respective attorneys. Upon the application of the terre-te-
nants, the plaintiffs were required, by rule of Court, to file
security for costs. To the declaration, which was in the
usual form, the heirs pleaded *riens per descent*, and the terre-
tenants, (except *Hartwell*, who, in the mean time, had died,)
pleaded that *Seth Cook*, and others, (five hundred and forty-
five in number,) whose names, places of residence, and lands,
were specified at length in the plea, were tenants of certain
lands in the county of *Otsego*, whereof *George Croghan* was
seised, at the rendition of the judgment, and were not na-
med in the writ of *testatum scire facias*, nor returned as te-
nants, wherefore they prayed judgment, if they should an-
swer the said writ, &c. This plea was verified by affidavit.
In consequence of this plea, the plaintiffs issued a writ of
*scire facias* to the sheriff of the county of *Otsego*, reciting
the former writs, and setting forth the sheriff's return; the
appearance of the heirs and terre-tenants; the declaration;
the death of *Hartwell*; and that the tenants had pleaded
that *three hundred and thirty-three* persons, (naming them,)
and also divers others, by them specified, were tenants, &c.
and were not named, nor returned, and commanding the
sheriff to summon those *three hundred and thirty-three* per-
sons, (and of whom *Seth Cook* was one,) to be, &c. and to

show why execution should not be made of the lands, where-
of they were tenants.

The sheriff of *Otsego*, returned to the last writ, that he
had summoned *three hundred and eleven* of those named, and
as to the remaining twenty, *nihil*.  Of those summoned, *two
hundred and seventy-six* appeared; the others, *thirty-five* in
number, (of whom *William James* was one,) not appearing,
their defaults were entered.    Against the twenty returned
*nihil* in the last writ, an *alias scire facias*, reciting the last
writ, and the sheriff's return, was issued, to Otsego county,
which was also returned *nihil;* this being deemed equiva-
lent to a *scire feci*, defaults were regularly entered against
them, for not appearing.

The terre-tenants last summoned being served with a de-
claration, *two hundred and thirty-five pleaded*, that there
were *thirty-six* other persons of the county of *Otsego*, na-
ming them, who were terre-tenants of lands held by *George
Croghan*, at the rendition of the judgment, and who were
not named, &c., and praying judgment, &c., (as in the for-
mer plea.)    *Rufus Hawkins* pleaded in abatement, that *Seth
Cook*, one of the tenants impleaded in the first dilatory plea,
and named in the second writ of *scire facias*, issued to the
county of *Otsego*, was *dead*, and that he died before the is-
suing of that writ, viz. in ,*March*, 1819.

*Robert Carr* pleaded, that *Abraham Hartwell*, one of the
terre-tenants *first summoned*, was dead ; that he died after
the issuing and return of that writ, viz. on the 10th *Febru-
ary*, 1818, leaving *Luther Hartwell*, his son, and heir at
law, to whom the houses and lands, whereof *Hartwell* was
tenant, descended ; that the said *Luther Hartwell* was not
named in the proceedings, and praying judgment, and that
the writ may be quashed.

*Ephraim Carr* pleaded, that *Samuel Cooper*, one of the
terre-tenants first summoned, was dead; that he died after
the pleading of the plea, by the said *Samuel Cooper* and others,
(first dilatory plea,) to wit, of the 15th *February*, 1819,
and praying judgment, and that the writ may be quashed.

To the three last mentioned pleas in abatement, the plain-
tiffs demurred, and the defendants joined in demurrers.
*Thirty-seven* others pleaded *non-tenure*, which plea was re-

plied to by the plaintiffs, and issue joined. In the mean time, *one hundred and sixty-nine* persons of those impleaded in the first dilatory plea, appeared voluntarily by their attorney, and pleaded *non-tenure*, to which the plaintiffs replied, and issue was joined.

Against the remaining *forty-five*, impleaded by the first dilatory plea, another writ of *scire facias* was issued to *Otsego* county, which was returned *nihil*, and an *alias scire facias* being returned against them, in like manner, their defaults, for not appearing, were entered. The *five hundred and forty-five*, first impleaded, being thus disposed of, the plaintiffs filed an affidavit of that fact, and entered, in *October*, 1820, a rule, requiring the surviving tenants, first summoned, to answer further in twenty days; a notice of which rule was served on their attorney, on the 12th *October*, 1820. The tenants, first summoned, then applied to the Court for an order, that the rule to answer further be set aside, and that the several writs of *scire facias*, and all proceedings thereon, be set aside, with costs; which motion was founded upon an affidavit, stating, that *Abraham Hartwell* and *Samuel Cooper*, returned as tenants, were dead. That *Seth Cook*, one of the terre-tenants, named in the second *scire facias*, issued to the county of *Otsego*, was dead, and that he died before the issuing of that writ. That *Abraham Marvin* and *Gaius Smith*, two other of the terre-tenants, named in the last mentioned writ of *scire facias*, had died since the return thereof, and that pleas in abatement, grounded on the deaths of those persons, were pending.

This motion was argued in *January* term, 1821, by *R. Campbell* and *J. V. Henry*, for the terre-tenants, and *B. F. Butler*, (*Burr, E. Williams*, and *Van Buren*, same side,) for the plaintiffs. The Court held the matter under advisement until the next *May* term, but, in the mean time, the plaintiffs, on the 9th day of *April*, 1821, and before the expiration of the limitation in the act, entitled "An act concerning judgments and executions," docketted a judgment against 109 persons, whose defaults for not appearing had been previously entered, viz. 36 upon a return of *scire feci*, and 73 upon two returns of *nihil*, entering upon the record a *nolle prosequi*, as to the heirs, and all the terre-te-

NEW-YORK,
May, 1822.

MORTON
v.
CROGHAN.

*nants who had appeared.* In consequence of this proceed-
ing, the motion argued at *January* term, 1821, was not de-
termined by the Court. The defendants, against whom
judgment had been entered, now moved, upon the grounds
stated in the argument, that the judgment be set aside ; the
surviving terre-tenants, *first summoned*, also moved that the
bond filed as security for costs, should be delivered up, to
be prosecuted by them ; and the terre-tenants, who had ap-
peared and pleaded the second dilatory plea, also moved for
costs against the plaintiffs.

*R. Campbell*, for the defendants. 1. The writs of *scire
facias* have all been issued without first obtaining the leave
of the Court for that purpose, though the judgment was of
more than twenty years standing. (*Lansing* v. *Lyons,*
9 *Johns. Rep.* 84. *Bank of New-York* v. *Eden*, 17 *Johns.
Rep.* 105.) These defendants being now before the Court,
for the first time, are entitled to make this objection, and
to move to have the writs quashed.

2. No proceedings have been had against the personal
representatives of *Croghan*, previous to issuing the *scire
facias* against the heirs and terre-tenants. The judgment,
therefore, against the terre-tenants, is irregular. (*Tidd's
Pr.* 1032. *Fitz. N. B.* 595. *Bac. Ab.* tit. *Scire Facias,*
C. 5. . *Carth.* 107. 2 *Saund.* 72 *o.* 72 *p.* notes. *Whit-
ney* v. *Terre-tenants of Crosby*, 3 *Johns. Rep.* 86.) It may,
perhaps, be objected, that this should be taken advantage of
by plea, and not by motion ; but we have found no prece-
dent for such a plea. The statute relative to judgments and
executions, directs the execution to be first issued against the
goods and chattels of the debtor. (1 *N. R. L.* 502, 503.
sess. 36. ch. 5. s. 9.)

3. But admitting that the proceedings were regularly
commenced, the writs have abated by the deaths of various
terre-tenants. The statute (1 *N. R. L.* 519. sess. 36. ch.
56. s. 9.) does not apply to such a case, and the plaintiffs
have no right to suggest these deaths on the roll. Where
all proper parties are before the Court, and one dies, there
is no good reason why the suit should abate, when the cause
of action survives ; but where the heirs of the deceased must

be made parties, there a new suit is necessary. The rule of the common law is, that the death of one terre-tenant abates the whole proceedings, unless where the survivors have the whole interest, by survivorship; for every tenant to the land is entitled to have contribution from the other tenants of the land; and, therefore, unless *all* the tenants are warned, the others are not obliged to answer: and if the defendant does not take advantage of the omission by a plea, he will be concluded, and cannot call on the others for contribution, and execution will go against his land alone. (2 *Saund.* 9. note 10.) The second *scire facias* names parties who are liable to contribute, and have not been brought before the Court. It recites the death of *Abraham Hartwell*, one of the tenants. If the plaintiff names the terre-tenants, and omits one, the suit is abated; for he can have a better writ. (6 *Bac. Ab.* tit. *Scire Facias*, C. 5.) Again; if the writ is general, and the sheriff returns that he has summoned *A. B.* and *C.*, it is bad, for he ought to return *all* the tenants. Again; *Seth Cook*, named in the writ as one of the tenants, was dead when the writ issued. His death must abate the writ *in toto;* for it is false on the face of it. (*Com. Dig.* tit. *Abatement*, E. 17. *Vin. Ab.* tit. *Abatement*. A. pl. 22. 2 *Saund.* 72 *i.* *Bac. Ab.* tit. *Abatement*, L.)

4. As to those tenants against whom judgment has been entered upon the return of *two nihils*, the judgment is wholly irregular. The return of a *nihil* to a *scire facias* against terre-tenants, is a perfect nullity, and will not authorize any proceedings against them. It is absurd to charge a person as a *terre-tenant*, when the sheriff returns that he has no land, nor any thing by which he can be warned. (*Vin. Ab.* tit. *Scire Facias*, (I.) 1 *Brod. & Bingham's Rep.* 381. 2 *Wm. Bl.* 995. 1141.) Again; a year elapsed after the plea, and before a second writ issued; and between the time of the plea and the issuing of the writ, *B. P.*, one of the tenants, aliened his land, and removed. Now, can a *nihil* returned by the sheriff to this writ, bind the purchaser from *B. P.*, or the new tenant?

5. The plaintiffs have entered a *nolle prosequi* as against above four hundred of the tenants, who had been brought

before the Court, and have entered a judgment against the others, thus throwing the burden of the whole debt upon them. This *nolle prosequi*, we contend, operated in the nature of a *retraxit*, and discharged all the defendants, so that no judgment could be entered against any of them. The exceptions to the general rule are, when the discharge is merely personal, as in the case of *bankrupts*, *infants*, or *executors*. There would be manifest injustice and hardship in making these few tenants pay the whole debt, without having any right to call on the heirs, or other tenants, for contribution. Serjeant *Williams*, in his note to *Salmon* v. *Smith*, (2 *Saund.* 207 a. n. 2.) has collected all the cases on this subject. (1 *Wils.* 89. *Cro. Eliz.* 762. *Tidd's Pr.* 632. *Robertson* v. *Smith*, 18 *Johns. Rep.* 459.) There is, too, a *nolle prosequi* as to the heirs of some who were liable in the first instance.

6. At all events, the defaults ought to be set aside, as the defendants have sworn to merits; and most of those who were summoned give sufficient excuses for not appearing; and two of the defendants, *William James* and *Isaac Lewis*, deny all notice. As to those against whom *nihils* have been returned, and who were not summoned, they are entitled to be let in to defend, as a matter of course.

As to the question of *costs*, he contended, that the plaintiffs had subjected themselves to pay costs to all the defendants discharged by the entry of the *nolle prosequi*. The *nolle prosequi* was the same as a *discontinuance*; and so within the statute relative to *costs*. (3 *Term Rep.* 511. 17 *Johns. Rep.* 263. 3 *Bos. & Pull.* 115.)

*Butler*, and *Talcot*, (A. G.) contra. 1. As to the first objection; it should have been made by the persons first summoned, in *January*, 1818; persons brought in subsequently cannot make it. Where a judgment has been once revived, within *ten* years, though obtained long before, the plaintiff may have a *second scire facias*, without motion, or leave of the Court; and that, too, against different persons. (*Hardisty* v. *Barney*, 2 *Salk.* 598. 2 *Sellon's Pr.* 116. 2 *Saund.* 12 g. note 7.) There have been revivals of this judgment against the *heirs*, in 1806, 1807, and 1809. This

is evidence, *prima facie,* that the debt remains unpaid ; and affidavits of the fact were filed soon after the commencement of the suit, in reference to the application for security for costs. The writs against the present defendants were issued in consequence of the plea put in by the sixteen tenants first summoned, that there were other tenants who ought to be summoned, so that the plaintiffs were compelled to proceed, by the express award of the Court, or be *non-prossed.*

2. It no where appears that *C.* had any *personal* representatives. And if it did, the objection cannot be made, at this time, and by these defendants. The judgment has been several times revived against his *heirs,* and part of the debt has been made of the lands in their hands ; yet no such objection was raised. It must be presumed that there were no personal representatives, or that they had *no assets.* At any rate, the defendants are in default, which precludes them from making the objection. (*Whitney* v. *Camp, 3 Johns. Rep.* 86.)

3. That the proceedings have abated by the death of any of the tenants, is a matter which cannot be determined on motion. The law has prescribed an appropriate plea for such a case; and what a party can plead, he cannot bring up on motion. (*James* v. *Penrise, Loft's Rep.* 65.) *Hartwell,* and the other two tenants whose deaths are relied on, (except *Cook,*) died after appearance, and their deaths abated the proceedings as to them only. That was the case on *scire facias,* even at common law. (*Vin. Ab.* tit. *Abatement,* M. a. pl. 16. *Com. Dig.* tit. *Abatement,* H. 35. 42 *Assiss.* 262. case 22. 10 *Co.* 134. *Cro. Car.* 518.) Besides, our statute, (1 *N. R. L.* 519.) in spirit at least, if not in express terms, applies to this case, as well as to any other ; and the deaths have been properly suggested on the roll. If the death of one tenant, pending the suit, abates it as to all, it will be utterly impossible to revive a judgment against numerous tenants. The deaths of these persons appear on the record, and the defendants may bring their writ of error. As to *Cook,* the sheriff has returned *nihil ;* and the allegation of his death contradicts the return, which is not allowed on a *scire facias.* But we contend, that his death abated the suit as against himself only. It is true, the rule

NEW-YORK,
May, 1822.

MORTON
v.
CROGHAN.

NEW-YORK, is laid down in some of the *Digests*, and elementary books,
May, 1822. as stated by the defendant's counsel; but its accuracy may
MORTON    well be doubted; and if correct, it does not apply to a *scire*
v.        *facias*. A *misnomer* of one defendant renders the writ equally
CROGHAN. false; yet, in that case, the writ is good against those right-
ly named. (*Blackman's* case, 8 *Co.* 179 *b.* 1 *Chitty's Pl.*
441.) The cases cited in the *Digests* and *Abridgments*, in
support of the rule, are very ancient; and such a mistake
will hardly be deemed fatal, at the present day. But in
many of the old cases, it has been held, that the death of
one defendant before writ purchased, abates the writ as to
him only. (*Pollard* v. *Jekyll, Plowd.* 89. *Vin. Ab.* tit.
*Abatement,* Q a. S a. T a.) Whatever may have been the
practice in other cases, the rule has not been applied to *scire
facias*, which being a *judicial*, not an *original* writ, the rule
is not so rigorous as in other cases. (*Read* and *Redman's* case,
10 *Co.* 134.) The objection has, indeed, been taken, in se-
veral instances; but the writ has been held good as to the
tenants surviving. (*Vin. Ab.* tit. *Abatement,* S a. p. 65—68.
*Bac. Ab.* tit. *Execution,* G. 4 *Hen.* VI. 3. 19 *Hen.* VI.
9. 41 *Edw.* III. 13. 3 *Hen.* VII. 1. 6. case 2. 38 *Edw.*
III. 20. *Cro. Car.* 518.) The mode of proceeding, in
modern times, by *scire facias* against terre-tenants, is, not to
name them; and the persons returned by the sheriff can plead
in abatement, that there are others who ought to be sum-
moned; but this plea merely suspends the proceedings until
the others are brought into Court. (*Jefferson* v. *Morton,*
2 *Saund.* 6. 9. notes.)

Again; a *scire facias* may be amended, when it is not
brought to charge bail. The Court may, then, allow the
writ, in this case, to be amended, by striking out the name
of *Cook*. (*Underhill* v. *Devereaux,* 2 *Saund.* 72 *r.*)

4. We admit, that the defendants against whom judgment
has been entered on the return of two *nihils*, are entitled to
be let in to defend, if they disclose a good defence. (2 *Saund.*
72 *u.* notes.) Here, the defendants have not set forth their
defence. But if the judgment should be set aside as to
them, it ought to stand as to the others. Even in *assumpsit*,
a judgment may be set aside in part; (2 *Caines' Rep.* 254.)
and the proceedings are severable. (*Cro. Car.* 518.)

5. The *nolle prosequi* appears on the record, and if it discharges *all* the defendants, the judgment is erroneous, and may be reversed by writ of error. But we contend, that it discharges those only against whom it was entered. (*Salmon* v. *Smith*, 1 *Saund.* 207. n. 2.) In *England*, by the common law, land could not be sold on execution, but was put into the possession of the creditor, until, out of the rents and issues, he had satisfied his debt. Here the statute gives an execution against the lands of the debtor ; and the sheriff, in case of terre-tenants, is to levy the debt out of the *lands* alone. In *England*, it was necessary to bring in the co-tenants, in order to save to the others their right to a contribution ; but, under our statute, the right of contribution does not exist. Contribution, in *England*, relates to the rents and issues. (3 *Co.* 14. *Harbert's* case.) Why compel all these terre-tenants to be brought in, when, if they were before the Court, all the lands possessed by them could not be sold, but enough only to satisfy the judgment ? And if the land held by the first terre-tenants who were summoned and appeared, was amply sufficient to satisfy the judgment, it would be idle to bring the others into Court. This is not the case of a joint contract, where a *nolle prosequi*, as to one, discharges all the defendants, unless upon the infancy, &c. of the one. There is no contract whatever between the plaintiffs and the *terre-tenants :* the lands in their possession are alone liable. It is analogous to an action of ejectment, in which a *nolle prosequi* as to one, discharges him only. (2 *Saund.* 207.) Such is the case, also, in real actions. (12 *Mod.* 654.) The pleas, here, were severable ; and no case can be stated in which the defendants have less privity with each other. (*Cro. Car.* 518.) Many of the defendants pleaded *non tenure ;* none of them pleaded any thing going in discharge of the judgment. As to the right of contribution against the tenants discharged by the *nolle prosequi*, it does not appear that the lands of those tenants were ever liable to the judgment. They have not admitted the fact, as the present defendants have done, by suffering a default, But admitting that they are liable to contribute, ought the plaintiff's execution to be delayed. until contribution is adjusted and enforced be-

NEW-YORK,
May, 1822.

MORTON
v.
CROGHAN.

tween the tenants ? In *England*, where lands are *extended* against *terre-tenants*, contribution may be enforced, *pari passu*, with the execution of the *elegit ;* and that, whether the tract of land be large or small. Execution is, therefore, delayed, until all are brought in. (3 *Co.* 14.) But here, where lands in the hands of different tenants, and to any extent, may be sold on execution, it is impossible to effect an equal contribution at the sale. Here are about 600 tenants, occupying more than 25,000 acres of land. The whole could not be sold ; nor more than one lot, if that would produce sufficient to pay the debt. (*Wood* v. *Merrill,* 1 *Johns. Ch. Rep.* 505. *Jackson* v. *Newton*, 18 *Johns. Rep.* 362.) It would have been no benefit to the present defendants to have had the execution awarded against all. They would still have been obliged to proceed against the others ; and, therefore, no objection exists to discharging a number of them by *nolle prosequi*. Our statute has pointed out a mode of enforcing contribution, peculiarly applicable to our practice ; (1 *N. R. L.* 503.) and by which these defendants may compel the others to contribute. They have, also, a remedy at common law, by the writ *de contributione facienda ;* (5 *Vin. Ab.* tit. *Contribution and Average,* p. 561.) or they may file a bill in Chancery.

6. As to the defendants who were returned by the sheriff *seire feci*, the return cannot be contradicted. (2 *Str.* 813. 2 *Salk.* 601. *Cro. Eliz.* 872. 1 *Wm. Bl.* 394. 2 *Wm. Bl.* 873. 3 *Vin. Abr.* 323.) Neither *James* nor *Lewis* reside in *Otsego* county, and probably service could be, and was, made on their tenants. That the defendants who were summoned have a good defence, will not authorize the setting aside the judgment, after default. A terre-tenant, who makes default on a return to a *scire facias*, cannot be let in to make a defence, however meritorious his defence may be. This is the established rule in *England*, and in this State. (*Jackson* v. *Robbins*, 16 *Johns. Rep.* 579. *in Error, and cases there cited, per Kent*, Ch. 3 *Vin. Abr.* 322. *Cooke* v. *Berry*, 1 *Wils.* 98. *Whitney* v. *Camp*, 3 *Johns. Rep.* 87. 2 *Saund. Rep.* 72 *u.* note.)

None of the defendants are entitled to *costs*. In *scire facias*, the plaintiff is not liable to costs, on becoming nonsuit,

or suffering a discontinuance, as to a part of the defendants, if he obtains a judgment against some of them. The statute, (1 *N. R. L.* 345. s. 10.) applies only where there is a discontinuance as to *all* the defendants. (*Hullock's Law of Costs,* 142. 2 *Str.* 1105. 2 *Burr.* 1284.) Besides, after a plea in abatement, a plaintiff may discontinue without costs; (*Tidd's Pr.* 612.) and that, too, in *scire facias.* (*Poole* v. *Broadfield, Barnes,* 431. *Hullock,* 303. 1 *Str.* 638. 2 *Saund.* 72. note.)

*Henry,* in reply. The judgment is a *lien,* or it is not: If a *lien,* it is upon *all the lands* of *G. Croghan,* and which were sold by him to these terre-tenants. The right of contribution, therefore, must exist; otherwise, where several are bound, the creditor may select any one, or more of them, to bear the burden, and discharge the whole debt. Where there is a common burden imposed on several persons, the right of contribution exists between them, on the plainest principles of morality and justice. (2 *Saund.* 51 *a.* note. *Id.* 72 *p.* note.) The doctrine of contribution is more necessary and just here, where lands are sold under execution, than in *England,* where they are held under an *elegit.* Our statute does not vary the common law doctrine, but embraces this most equitable and salutary principle of contribution, by allowing to a person, who has paid the whole of a judgment, where others are equally liable with him, a *scire facias,* to obtain contribution from the others.

A return of two *nihils* to a *scire facias,* where the debt is *personal* merely, is absurd enough, and violates one of the clearest principles of justice, that no person shall be made to answer, until he has been summoned to appear. But in regard to a charge on *land,* if the sheriff returns that the tenant has *nothing* by which he can be summoned, how can the Court charge his land, as a *terre-tenant,* when, by the return, it appears that he has no land whatever. Here are tenants who have not been summoned, or warned at all, who have received no notice whatever; and they come, at the first day, and ask leave of the Court to be let in, to plead. Suppose one tenant comes in and pleads payment of the whole debt; must there not be a *curia advisare*

*vult*, until that plea is tried? And, if found for the defend-
ant, must not the plaintiff go without day, as to all the de-
fendants? Then, we say, this judgment must be set aside
as irregular. It cannot stand in part, and be set aside in
part. It was premature. One of the pleas had been demur-
red to. Can the plaintiff be permitted to leave any of the de-
fendants he pleases out of Court, and proceed against the
rest? (Lord *Raym.* 600. *Str.* 783. 2 *Bac. Abr. Error.*)
Several of the tenants have pleaded *non-seisin.*

It has been said, that, because there was a revival of the
judgment once against the heirs, without the leave of the
Court, a *scire facias* may go against the terre-tenants without
leave. But the default, or acts of heirs, who are, also,
terre-tenants, cannot affect or compromit the rights of the
other terre-tenants.

If the death of *Hartwell* does not abate the suit, then his
legal representatives must be brought into Court by *scire fa-
cias*, which has not yet been done. The law on this sub-
ject is very fully and clearly laid down by Serjeant *Wil-
liams*, in his notes to *Jefferson* v. *Morton*, (2 *Saund.* 9. notes
8, 9, 10.) An imparlance is to be given to the tenants warn-
ed, until the other tenants are brought in. The judgment,
therefore, in this case, has been premature and irregular.
As, in an action against two joint tenants, if one only ap-
pears, you cannot proceed, until the other comes in. A *lien*
on land does not survive; and, if it did survive, why have
the plaintiffs proceeded against the legal representatives of
some of the deceased tenants?

A *nolle prosequi* is equivalent to a discontinuance; and
the defendants are entitled to *costs.* (*Cooper* v. *Tiffin*, 3
*Term Rep.* 511. 17 *Johns. Rep.* 268.)

SPENCER, Ch. J. delivered the opinion of the Court.

Motions have been made for relief, in several cases, on
the applicati n of the terre-tenants, on different grounds,
and on different notices, adapted to the different classes of
cases. There is, however, one ground of relief common to
all of them, and if that is tenable, it supersedes the necessi-
ty of discriminating the cases. The application for relief
comes from persons against whom judgment has been enter-

ed by default, at the *January* term, 1821, either on the return of two *nihils*, or upon returns of *scire feci*. In the former cases, there are affidavits of merits, and of surprise, from want of actual notice; and, in the latter, generally, of an intention to defend, and accounting for the omission to do so. The principle relied upon is, that with respect to those who have appeared and defended, being upwards of four hundred terre-tenants of the same lands on which the judgment is a lien, a *nolle prosequi* was entered on the 9th of *April*, 1821; and it was also entered as to the heirs of *Croghan*.

It has been insisted, that the entry of the *nolle prosequi*, as to a part of the terre-tenants, is a discontinuance of the action, as to all the others; and that it is in the nature of a *retraxit*, enuring to the benefit of those who did not defend, from whatever cause.

The law applicable to this question, is laid down with entire precision and accuracy, by Serjeant *Williams*, in his 4th note to 2 *Saund.* 51 *a.* He says, that although the judgment survives, as to the personalty, yet it does not as to the real estate; for, at common law, the plaintiff might take the goods of the survivor in execution by a *fi. fa.*; but the plaintiff, under the statute of *Westminster* 2, must sue out an *elegit* against the lands of the survivor, and the heir and terre-tenants of the deceased; and that where the lands of several are charged with a debt, it shall not be wholly on the survivor; as, if a recognisance be acknowledged by several, the lands of them all are thereby become chargeable and execution *must* be equally made; and if one dies, the creditor *must* bring a *scire facias* against his heir and terre-tenants, and also, against the survivors; but it is otherwise where the lands are not bound; as, if two enter into a bond, and one dies before judgment, the survivor shall be charged alone. He states the case where judgment in debt was had against two, and one died; the plaintiff brought *scire facias* against the survivor only; the defendant pleaded, that the other had left lands and an heir, upon whom they had descended, and demanded judgment, if he should be compelled to answer, without the heir being warned; the plaintiff demurred, and judgment was given, that the defendant

should answer, for that the judgment was against the per-
son; and although, now, by the statute of *Westminster* 2,
which gives the *scire facias* and *elegit*, he may charge the
lands and make the judgment real, yet, it is at his election,
to proceed in the personalty, if he will; but if he will take
out execution upon the *real lien*, the charge must be equally
against both, and the *scire facias* against both.    Serjeant
*Williams* refers to several cases in support of this doctrine,
and they fully support him, particularly Sir *William Har-
bert's* case, 3 *Co.* 11.    Many cases are there noticed, that
where the charge is upon the land, which was in the hands
of several persons when the charge was created, as in the
case of a recognisance, the conusee cannot extend the land
of one conusor only, but all must be equally charged.    So,
if there be only one conusor, if divers persons purchase the
lands subject to the recognisance, one only of the conusors
shall not be charged, for he stands in equal degree with the
others.    The case of Sir *John Langford* is there stated,
which was thus:    Four men were bound in a recognisance,
and afterwards one died, and his heir being within age, a
*scire facias* was brought against the three survivors to have
execution, who pleaded, that the heir of the conusor, who
was dead, was within age, and as during his minority he
could not be charged, and the survivors ought not to be
charged, they prayed judgment.    The fact not being de-
nied, it was awarded, that the *parol* should *demur*, and the
judgment was affirmed in error.    So, if two men aliene
lands with warranty, the lands of one only shall not be ren-
dered in value; neither, if one dies, shall the lands of the
survivor only be rendered in value, but the charge shall be
equal on them both; for a joint lien binding the lands shall
not survive, or lie only on the survivor.    *Coke* cautions the
reader to note, that where it is said, before and often, in our
books, that if one purchaser only be extended for the whole
debt, he shall have contribution, it is not thereby intended
that the others shall give or allow him any thing, by way of
contribution; but it ought to be intended that the party who
is alone extended for the whole, may, by *audita querela*, or
*scire facias*, as the case requires, defeat the execution, and
thereby he shall be restored to all the mesne profits, and

compel the conusee to sue execution of the whole land; so

in this manner every one shall be contributory, that is, the land of every terre-tenant shall be equally extended. The case of *Edsar* v. *Smart*, (Sir *T. Raym.* 26.) is, also, to the same point. There, a judgment was against two; one died, and a *scire facias* issued against the survivor; there was a plea, that he who died had an heir, who was in full life. On demurrer, the plaintiff had judgment. *Wyndham*, J. said, that the reason why this execution should be against the survivor, was, because the plaintiff may take a *fi. fa.* if he will, and perhaps he will not charge the land. *Twisden*, J. was of the same opinion; and he said, if upon this *scire facias*, the plaintiff takes an *elegit*, the defendant may have an *audita querela*, or he may suggest this matter, on the return of the *elegit*, and have a *supersedeas*. In *Pennoir* v. *Brace*, (1 *Salk.* 320.) *Holt*, Ch. J. held, that a *capias*, or *fi. fa.*, being in the personalty, might survive, and might be sued against the survivors, without a *scire facias*; otherwise of an *elegit*, for there the heir is to be contributory.

I apprehend the law to be well settled, since the statute of *Westminster* 2., that where the judgment creditor proceeds to enforce his lien on the realty, and for that purpose, it becomes necessary to revive the judgment, he is bound to make every person having a fee in the land, a party to the proceeding; and, in this case, the judgment against *Croghan*, being a lien on the real estate, in the hands of the terre-tenants, the plaintiffs are required by law to make all the terre-tenants parties to the *scire facias*, to the end that they may be made jointly contributory to the satisfaction and payment of the judgment. This has been shown to be the established principle, under the statute of *Westminster* 2., which gave the creditor his remedy by the execution of *elegit*, under which he held the moiety of the debtor's lands, until he was satisfied his debt and damages. At common law, the *fi. fa.* went merely against the goods and chattels of the debtor; such an execution, therefore, related merely to the personalty; but, under our statute, which subjects the lands and tenements of the debtor to be sold, absolutely, for the satisfaction of the debt, it is, ordinarily, an execution partly in the personalty, and partly in the realty;

and, in the present instance, it is entirely in the realty, for the goods and chattels of the *terre-tenants* cannot be affected by the judgment, or any execution under it. The same principle which required the *elegit* to issue against all who ought to bear the burden, applies with much more force to the *fi. fa.* against the lands; for, in the former case, they were not to be sold, but a moiety only held, until the debt was paid; whereas, in the latter case, they are liable to be taken away for ever from the debtor. Besides, the principle is most just and equitable; if the creditor, having the *lien,* can select a few, as in this case, to bear the whole burden, they may, probably, be crushed by its weight; but, if he must render them all contributory, the individual burden may be borne without ruin.

It was supposed, on the argument, that our statute, (1 *N. R. L.* 503.) giving remedy by way of contribution, where several persons are bound by a judgment, and one pays more than his share, had a bearing on this question. I apprehend that it has none. It merely provides for the case of an undue proportion of a judgment having been paid by, or levied upon the lands of one of the persons liable to a judgment. It does not profess to settle any principle, whereby the one may be subjected to pay more than his proportion, but merely gives a remedy where the case occurs. It seems to follow, from the principles to which I have referred, that the plaintiffs cannot have proceeded correctly, in entering a *nolle prosequi* against those who have appeared and pleaded, taking judgment against such as have not pleaded; and that they cannot be allowed to enforce the judgment thus taken.

The next question, under these circumstances, is, what relief is to be afforded to those against whom judgments have thus been taken, and what is the effect of the *nolle prosequi?* The law has undergone a change in relation to the right of a plaintiff to enter a *nolle prosequi,* and as to the effect of it. It may be entered as to one of several defendants, in actions of *tort,* without affecting the plaintiff's right to proceed against the others; for, in such cases, the plaintiff has his election to sue them severally or jointly. So, where one of the defendants pleads matter which goes to

his personal discharge, in an action necessarily joint, as in *assumpsit*, or debt, such as bankruptcy, that he was never executor, and, under the decisions of this Court, infancy, and such pleas as do not go to the *action of the writ;* in these cases, a *nolle prosequi* may be entered as to one defendant; but where all the defendants are necessarily parties, and the plaintiff was obliged to make them parties, as in the proceedings against the *terre-tenants*, a discontinuance as to some, is a discontinuance as to all. In the case of *Noke* and *Chiswell* v. *Ingham*, (1 *Wils.* 89.) the action was upon promises. *Noke* pleaded a plea that was found against him, and judgment was rendered thereon. *Chiswell* pleaded a discharge as a bankrupt, and, as to him, a *nolle prosequi* was entered ; and, on error, the Court affirmed the judgment, on the ground that it was a personal discharge, and not a plea to the action. *Denison*, J. said, that if one defendant was to plead a plea that was to go to the action of the writ, he thought it might then have a different consideration; and, I think, Serjeant *Williams*, in his second note to 1 *Saund.* 207. evidently intimates, that in the case put by *Denison*, J., it would be fatal. Mr. *Tidd* (*Tidd's Pr.* 632.) comes to the same conclusion. In *Chandler* v. *Parkes* and *Danks*, (3 *Esp. N. P. Rep.* 76.) where, in an action for work and labour, one defendant pleaded the general issue, and the other infancy, to which last plea a *nolle prosequi* was entered, Lord *Kenyon* nonsuited the plaintiff, on the ground that the action was gone. This seems to be the inevitable consequence, in this case; for here, the plaintiff, being under the necessity to make all the terre-tenants parties, and to proceed against them all, until he was satisfied, has by his own act disabled himself from doing so. He cannot proceed against part of the terre-tenants, and discontinue as to part; and, having discontinued, he can proceed no further. The defendants are, then, entitled to their motion to set aside the defaults and judgments against such of the terre-tenants as have not pleaded, on the ground that the plaintiffs have entered a *nolle prosequi* as to such as have appeared and pleaded ; and they are entitled, also, to be paid the costs of this motion.

The only remaining question is, whether the plaintiffs are

NEW-YORK, liable to pay the costs, as in a case of discontinuance, as to
May, 1822. such of the defendants with respect to whom a *nolle prosequi*
VAN NESS has been entered; and whether judgment is to be given for
v. such costs, or the defendants are to be put to a prosecution
HAMILTON. of the bond given under the direction of this Court.

The 11th section of the *act concerning costs*, (1 *N. R. L.*
345.) gives the defendant costs, if the plaintiff suffers the suit
to be discontinued; and it is a transcript of 8 *Eliz.* ch. 2. s. 2.
In *Cooper* v. *Tiffin*, (3 *Term Rep.* 511.) the Court held, that a
*nolle prosequi* could not be distinguished, in reason, from a
discontinuance; and that the practice had been, to give
costs in such cases. *Tidd's Pr.* 630. is to the same effect.
The motion is in the alternative, either for a judgment for
costs, or for a rule that *George W. Prevost*, the assignee of
the judgment, pay the costs; and that the bond of *Andrew
Edmonston*, filed as security for the payment of costs, to
*James Cooper*, *George Pomeroy*, and others, be given up
to the defendants, to be prosecuted. I incline to the opinion
that the latter course would be most appropriate. Several
other points were discussed on the argument, but the neces-
sity of considering them is obviated by the opinion already
expressed.

Motion granted accordingly.