By the Court,
Robertson, Ch. J.
This court has recently, in an action brought to recover on a contract for the sale of land, held that the relief demanded in the summons and complaint determines the character of the action, so that a prayer for damages exclusively, prevents a judgment for specific performance, notwithstanding the complaint contains facts sufficient to warrant it. (Fowle v. Jones, 1 Rob. 84.) As the relief demanded in the complaint in this action is for a sum of money only, it becomes immaterial whether a case for spe *66 cine performance is made out or not. The sole cause of action, cognizable by us, is, therefore, a breach of the covenant of renewal contained in the original lease from the plaintiff to the defendant.
One objection taken at the trial, was that the defendant was not bound to take, although the plaintiff was, to give a lease. If it were a question of election on the part of the former, his appointments of appraisers, and remaining in possession of the premises, would be evidence of his agreeing to accept a properly renewed lease. But the original' covenant is expressly declared to be mutual, and the language of the whole of it implies a reciprocal obligation. Such objection was, therefore, properly overruled.
Another objection to the plaintiff’s right of recovery was that he had no title to the premises. It is to be remembered, however, that although this is merely an action at law, the defendant has not set up such want of title as a defense, and the plaintiff might disregard his own allegation of power and title to lease as not essential to his case. The denial in the answer of the plaintiff’s authority to lease, is qualified, being that the defendant has not sufficient knowledge and information sufficient to form a belief in relation thereto. The Code requires that every allegation in a pleading should be positive or on information and belief. The negation of a fact, simply because a party has not enough information to have any belief about it, is not equivalent to stating information and consequent belief that such fact does not exist, This question is important in regard to the burden of proof; if the_ defendant contends that the consideration of his contract has failed by the inability of the plaintiff to give a good title, he is bound to establish it. Possession of a good title by the vendor, may be matter of implied warranty on his part, (Sugd. on Vend. ch. 1, § 3, art. 17 ; Burwell v. Jackson, 9 N. Y. Rep. 535,) but it is not a condition precedent to his right of recovery, but matter of defense to come from the defendant. The latter, therefore, had no right, under the pleadings, to endeavor to establish such a defense.
*67 But even if the defendant had the right to set up a want of authority on the part of the plaintiff to lease, or a defect in his title, the evidence made out a prima facie title in him, which the defendant offered no evidence to rebut. The latter, besides testifying that the Beekmans were “ the oioners ” of the- property originally, obtained possession of the premises under a lease from Mr. and Mrs. Beekman, claiming to own the lands in fee which had been assigned to the plaintiff, The legal title to the premises in fee was traced down from such lessors to another Mr. Beekman and a Mr. Cox, described as trustees for a Mrs. De Peyster. Mr. Cox subsequently conveyed all his interest to his co-trustee, pursuant to an order of the Supreme Court, which directed him to do so, discharged him from his trust, and declared his co-trustee, upon such conveyance, to be sole trustee. Such order was made on a report of a referee, to whom a petition of Mr. Cox to such court to be discharged as such trustee had been referred, to take proof of the facts stated in such petition. The petition itself was not produced, but an entry of its filing in the books of the clerk of the Supreme Court was proved, and also a diligent but ineffectual search for it in that office. The attendance of Mr. Cox, personally, before such a referee, on such reference, was also established. The petition was recited in the final order of the Supreme Court. There was, therefore, sufficient prima facie evidence of the existence of such petition, and its presentation. Consequently, there was no outstanding interest, either legal or equitable, in Mr. Cox. If the trusts obstructed the right to grant a lease, the defendant was bound to establish it; there was no evidence that they did, and prima facie legal ownership establishes a right to lease. The defendant’s objection to the title was, therefore, untenable, under the evidence.
An objection of some difficulty arises to the plaintiff’s right of recovery, growing out of the character of the léase tendered. This does not contain a repetition of the second covenant for renewal contained in the first lease, which was conditional, or of the covenant for quiet enjoyment. The *68 plaintiff only undertook to renew the lease, that is, to give a new demise for a term of years. The terms of such agreements have never been stretched beyond their legitimate meaning. On the contrary, they have only been required at law to be literally complied with ; thus an agreement to convey in fee is satisfied by a deed without any covenants. (Van Eps v. Mayor, &c. of Schenectady, 12 John. 436. Fuller v. Hubbard, 6 Cowen, 13.) The original covenant to renew a second time on a contingency is a perfectly valid and binding contract, capable of being enforced when the contingency occurs. There is no obligation on the plaintiff to execute a similar new contract, when he is performing another covenant, merely because it is in the same instrument. It has no relation to the new term of years given, does not protect or affect it or the enjoyment of the land, and is not incidental to it. It binds the land into whosever hands it falls, (Piggot v. Mason, 1 Paige, 412,) as does that to pay for improvements, where, as in this .case, assignees are included. (Lametti v. Anderson, 6 Cowen, 302.) The omission of such covenant in the new lease does not, therefore, prejudice the lessee. Its insertion may make the statute of limitations begin to run from the new lease, instead of the happening of the contingency, but there is no principle which would render it obligatory on the lessor to give the lessee that advantage, merely because the two covenants are in the same instrument. Even in cases of covenants in a lease for perpetual renewals, the point does not seem to have been adjudicated that every renewed lease should contain a similar covenant, unless .the first lease contained a provision to that effect; and even where it did, it has beep held that trustees were not bound to insert it in a lease by them. (Hodges v. Blagrove, 18 Beav, 104.) In the case of Bridges v. Hitchcock, (cited in Iggulden v. May, 7 East, 237,) referred to on the argument, the covenant was for “ such further'lease as the lessee might desire ; ” and in Furnival v. Crew, (3 Atk. 83,) also so referred to, the terms were to “ grant a new lease, and so continue renewing them.” Although the cases of Rutgers v. Hunter, (6 John. Ch. 215,) and *69 Phyfe v. Wardell, (5 Paige, 288,) do not expressly decide this point, they seem to consider that a covenant for perpetual renewal, at least, is necessary to require the repetition of a covenant for renewal. The danger of a loss of the first instrument, or of evidence in the course of time, might, in case a lease was to continue forever, render a repetition of the covenant in such instrument necessary, when it would not he where there was to he but one renewal. The insertion of either a covenant for renewal, or for quiet enjoyment in the lease to be tendered by the plaintiff, was not a matter of strict right to be exacted on the part of the defendant before he could be sued at law. Possibly, in an equitable action for . specific performance, the defendant might have a right to be protected against any risk arising from loss of instruments, or otherwise, by a repetition of a covenant for renewal; aU though the plaintiff had not in ter-ms bound himself to insert such a covenant in his new lease ; but there seems to be' no reason for it in an action at law.
On the trial, testimony offered by the defendant to show by the opinions of witnesses that the lot in question was worth less than the sum at which it .was appraised, as well as the grounds of the decision of the umpire, was excluded. The only grounds of objection taken to such award in the answer, are : First. That the witnesses produced before the umpire by the defendant testified that the lot in. question was not worth more than twenty-five hundred dollars, while the plaintiff did not produce any witnesses, and no other testimony was taken by such umpire. Secondly. That no award of the umpire was ever served on the defendant. The last objection was overcome by proof to the contrary. It was also proved that it was agreed by the parties that the umpire should use the testimony taken before the appraisers, besides additional testimony, and that after the evidence had been closed, further testimony had been taken by agreement. In order to assail such award for fraud or misconduct, the defendant should have either commenced an action to set it aside, or, upon suitable allegations, have asked for the same relief affirmatively *70 in Ms answer. (Owen v. Boerum, 23 Barb. 187.) It is true it has been held in this court that a valuation by an umpire of land, to be appraised as an unincumbered lot, when he took the value of an incumbered lot as his guide, was an excess of authority, (Borrow v. Milbank, 5 Abb. Pr. 28,) and therefore void, even at law. But no such ground is taken in the answer in this case. Even if an arbitrator were precluded from using his own knowledge, or relying on his own judgment, there was no proof offered that the only testimony presented to the umpire stated a less value than he fixed, but merely that the lot was worth less, which cannot be used to set aside an award. (Underhill v. Van Cortlandt, 2 John. Ch. 339.)
The condition precedent to the performance of the defendant’s covenant having thus been determined, and a proper lease tendered, the only remaining question is as to damages. Keither party seems to have proposed a renewal until February, 1861; when the first submission was executed. Until that time the plaintiff could have ejected the defendant as holding over after his term had ended. Until the amount of rent was determined, and a lease tendered, the defendant could only be liable in an action for use and occupation, and the measure of the plaintiff’s right of recovery would have been the amount of rent previously paid. The testimony shows that the plaintiff refused to receive rent at that rate every year ; and yet there is no evidence of any attempt on his part to put the defendant in default by proposing to have the value of the lot appraised, until February, 1861. The first appraisement having fallen through, no new steps were taken until February, 1862, and the defendant remained at liberty to consider himself tenant from year to year, and at the same rent. He certainly was not bound to anticipate the appraisement, and tender, by conjecture, the possible amount of rent to be afterwards fixed. I think the plaintiff estopped from claiming interest on the larger rent by not having it determined, or putting the defendant in default, and on the former rate, by his refusal to receive the rent when offered. The lease was not *71 tendered, until July, 1862, and the increased rent only became payable at that time. Of course, the defendant having joined in the submission, was bound to have executed the lease when tendered ; if he had done so, he would have been liable for the increased rent from the time when it commenced ; not having executed it, he is liable for the loss sustained by the plaintiff thereby. If he had put his -refusal to execute upon the ground that his acceptance of it would make him liable for interest on each quarter’s rent, from the time it became due, possibly he might have been justified, unless the plaintiff agreed to'waive all claim to such interest. As it stands, the plaintiff is entitled to recover an amount equal to the advanced rent, with interest only from the 21st of July, 1862 ; and he must consent to make the necessary deduction, or there must be a new trial, with costs to abide the event.
If the plaintiff consents to make the proper deduction of interest, the exceptions of the defendant must be overruled, the motion for a new trial denied, and judgment given for the plaintiff for the amount so modified, without cost on the appeal to either party.