# CHARLESTON.

MAXWELL, *Administrator; v.* LEESON.

Submitted June 17, 1901.   Decided November 30, 1901.

| 50 | 361 |
| 58 | 422 |
| 50 | 361 |
| f63 | 475 |
| 50 | 361 |
| 66 | 12 |

1. DECREE OR JUDGMENT—*Decedent—Scire Facias.*
   Where the plaintiff in a judgment or decree for money dies, it is not necessary that a writ of *scire facias* to revive and have execution in the name of his personal representative against the defendant still living should make terre-tenants parties, and an award of execution upon a *scire facias* which keeps alive the lien of the judgment or decree on land as to the defendant, will also keep the lien alive as to the terre-tenants, though not parties to the *scire facias.*   (p. 363).

2. JUDGMENT LIEN EXISTS—*Execution Suspended.*
   The lien of a judgment upon land exists, though execution may be suspended by the death of the defendant, and may be enforced in equity without revival by *scire facias* so long as the *scire facias* may lie on the judgment.   (p. 365).

3. REVIVAL OF JUDGMENT.
   *Scire facias.*   Office of to revive a judgment.   (p. 365.)

4. LIEN OF JUDGMENT ARISES PER SE.

   The lien of a judgment upon land arises from the judgment *per se* irrespective of execution upon it so long as the judgment is not barred by limitations. (p. 366).

5. SCIRE FACIAS—*Defense Thereto.*

   To a *scire facias* to revive a judgment payment, release, set-off or other matter arising after judgment, may be pleaded, but not any matter existing prior to the judgment. (p. 368).

6. PARTIES INTEREST—*Effect of Judgment.*

   A privy in estate is not affected by a judgment against him from whom the privy derived his estate rendered after such privy acquired his estate. (p. 369).

7. JUDGMENT—*Revival—Execution—Decedent.*

   An order reviving a judgment and awarding execution for money in the name of a personal representative of a deceased party for a less sum than the original recovery by reason of partial payments since the judgment is not void as a new judgment or because of variance in amount from the original judgment. (p. 370).

Appeal from Circuit Court, Doddridge Count.

Bill by W. B. Maxwell, administrator of F. Maxwell, against Leroy Leeson. Decree for defendant, and plaintiff appeals.

*Reversed.*

EDWIN MAXWELL and MILLARD F. SNIDER, for appellant.

B. F. AYERS and HOMER ADAMS, for appellee.

BRANNON, PRESIDENT:

Franklin Maxwell on July 29, 1885, obtained a decree in the circuit court of Doddridge County against Leroy Leeson for one thousand seven hundred and fifty-seven dollars and fifty cents and docketed it in the judgment lien docket, and on August 24, 1885, execution issued, which was returned, by direction of Maxwell, by the sheriff. Then Maxwell died, and in February, 1895, W. Brent Maxwell, administrator of Franklin Maxwell, sued out a writ of *scire facias* against Leeson to revive the judgment and have execution awarded in his favor as administrator and on the 22d of March, 1895, the circuit court of Doddridge County entered an order in chancery reviving the decree in the name of said administrator and awarding execution. On the 3rd day of February, 1896, an execution was accordingly issued, and

was returned unsatisfied. Leeson owned lands bound by the lien of this decree, some of which he conveyed to Amzella Inskeep and some to W. H. H. Douglass, and said administrator, W. Brent Maxwell, brought this suit in equity in the circuit court of Doddridge County against Leeson, Inskeep and Douglass to enforce the lien of said decree against the lands so conveyed by Leeson to Inskeep and Douglass, which suit resulted in a decree dismissing Maxwell's bill on demurrer, and Maxwell has appealed to this Court.

A question in the case is whether the decree is barred by the statute of limitations as to Inskeep and Douglass? This chancery suit was brought on the 2d of September, 1899, more than ten years from the return day of the first execution, and thus the judgment is barred unless the decree, or rather, the award of execution upon the *scire facias* saves it from the bar of the statute. Inskeep and Douglass say that that *scire facias* and the award of execution upon it can have no effect upon them, because they were not parties to it. They are grantees of Leeson in possession while the lien of the judgment was in force. Is it necessary that Inskeep and Douglass should have been made parties as terre tenants to that writ of *scire facias?* The authorities differ upon this question. It is laid down in 21 Am. & Eng. Ency. L. (1 Ed.) 861, 862, that "where the judgment debtor has parted with the possession of the land during the time the land was liable to execution under the judgment, the present occupant or terre tenant must be made a party to and served with the writ of *scire facias.* The terre tenant is one who has an estate in the land coupled with the actual possession derived mediately or immediately from the judgment debtor while the land was bound by the lien." 1 Black on Judgments broadly says that "the rule is that on a *scire facias* to revive the lien of a judgment on land, which is in the possession of a terre tenant, it is essential that the terre tenant be made a party to the proceeding." To support this position we are also referred to *Mower* v. *Kip,* 6 Paige Ch. 88, and *Chahoon* v. *Hollenback,* 16 Am. Dec. 587, and *Morgan* v. *Crogan,* 20 Johns. 106, and Freeman on Judgments, Vol. 2, page 767. In this case the *scire facias* was against a living defendant, and sought execution in behalf of the administartor of a deceased plaintiff. In such case I state the true rule to be that laid down in 1 Freeman, Executions s. 87, that "in the case of the death of the original defendant the terre

tenants are to be made parties, and not where the original defendant is living. This view we thing is sustained by the books of practice. In none of these works do we find any reference to any case in which the successors in interest of a living defendant need be summoned as terre tenants. On the contrary, it seems always to be assumed that the only instances in which it can be necessary to summon others than the original defendants are where new persons have become interested either through the death, marriage or bankruptcy of the defendant." Such, surely, has been the practice in the Virginias. We never make alienees of the judgment debtor parties to a *scire facias* to revive judgments. It is to be understood that in this case we do not say what the law is as to the necessity of making terre tenants parties who claim under a dead judgment debtor. I think that it is in those states where under execution land may be seized and sold that the rule of making terre tenants parties to a *scire facias* prevails. Where an execution may be levied upon land there is reason to require notice to be served on terre tenants whose land is to be sold from them; but as an execution in this State is not leviable upon land, that reason does not exist. Such purchasers from the judgment debtor can have their land sold only by a chancery suit to enforce the lien of the judgment, and thus have opportunity to make their full defense against it. What is the reason for a *scire facias* to revive a judgment? It is to make the record consistent. It would not do, where the judgment was between living parties to issue an execution in favor of or against their administrators, as this would not harmonize with the record of the judgment; and hence we resort to a *scire facias* suggesting a change of parties in order to get an execution in new names, and thus show by the record why there is a departure in the execution from the judgment, and justify such variance. Foster on *Scire Facias* 99 says: "It is a general rule that in all cases where a new person who was not a party to a judgment or recognizance derives a benefit by, or becomes chargeable to the execution, there must be a *scire facias* to make him a party to the judgment. But where the execution is not beneficial or chargeable to a person not a party to the judgment, then it seems this rule does apply, and a *scire faciac* is not necessary. * * * *The reason for the rule is that the execution must be warranted by the judgment, and a new party being a stranger to the judgment, he not being named on the record, the judg-

ment would not warrant an execution for or against him until he should be made a party." In the place cited in Foster, and also on Page 189, Foster says that "where a sole plaintiff or defendant dies after judgment, a *scire facias* must be sued out by or against his personal representative, in order that execution may be had of the goods and chattels of the party against whom the judgment is given." See 2 Bart. L. Prac. 1022.

Now, this shows that where the execution goes only against personalty, only the personal representative is a necessary party. It goes to show that only he need be a party to a *scire facias* whose property is to be taken by execution under it. It goes to show that only a party to be benefitted or prejudiced directly by force of the execution itself need be a party to the *scire facias*. An execution does not either benefit or injure a terre tenant in West Virginia because his land cannot be taken by it and it has no effect upon him directly,—the execution itself has not. This is confirmed by Maryland decisions cited for the proposition, that although the defendant be living, the judgment cannot be revived against him so as to affect his grantees, unless they are made parties. But those cases show that it is upon the ground of contribution that all terre tenants are required to be made parties to a *scire facias*. There the execution operates to sell the land, and in order that one party may have contribution from other vendees to help pay the debt, they must be parties. *Doub* v. *Barnes,* 4 Gill 1, also *Morton* v. *Crogan,* 20 Johns. 106. These views tend to the conclusion that as in this State an execution does not affect land, there need not be in any case of *scire facias* service thereof on terre tenants, and they need not be parties; but this case being against a living defendant the terre tenants need not be made parties to the writ. This has been held in *Righter* v. *Rittenhouse,* 3 Rawle 273, and *Jackson* v. *Shaffer,* 11 Johns. 513, and *Young* v. *Taylor,* 2 Binn. 228. I will add that the passage quoted above from 21 Am. & Eng. Ency. L., so much relied on to support the necessity of purchasers being parties to a *scire facias,* relates to cases where a defendant has died.

In West Virginia the judgment is a lien on the land as against the debtor, and on land conveyed by him after the judgment in the hands of his vendee purchasing after the docketing of the judgment, or without docketing if he have notice of it. He takes the land encumbered by the judgment. He stands in the shoes of the judgment debtor, having acquired the land with

notice of the judgment creditor's rights, and thus he can be in
no better plight than the judgment debtor. In *Camden* v.
*Alkire,* 24 W. Va. 674, and *Pickens* v. *Love,* 44 W. Va. 725, it
was held that where land is encumbered by a deed of trust a
purchaser from the grantor in that deed of trust has no greater
rights against the creditor than the grantor himself, and the
title and possession of the one are no greater than the other,
and that as long as the deed of trust is not barred by time as to
the maker of the deed of trust, it is not barred as to the purchaser
from the maker of such deed of trust.

Why can we not just as well say that he who purchases land
with notice of judgments thereon stands in the shoes of him from
whom he derives his right, with no higher right than he has,
taking the land subject to that lien as long as it continues good
against his grantor?

Had Maxwell lived, he could have sued out execution with-
out joining those terre tenants. Then, why can not his admin-
istrator likewise sue out a *scire facias* without joining them, its
only purpose being to accomplish the same end which Maxwell
would have accomplished had he lived.

Another consideration seems to me forceful. If either party
to a judgment die, while no execution can go without revival
against the personal representative by *sci fa,* yet the lien on the
land still exists as long as a *sci fa* may be sued out, and that is
within the period limiting the judgment. *Laidley* v. *Kline,* 23
W. Va. 565. As statute law makes the judgment a direct legal
lien on the land until it is barred—I say makes the judgment a
lien—an equity suit may be brought to enforce that lien notwith-
standing the death of a party, either party, may have suspended
right of execution upon the judgment until revival. *Burbridge*
v. *Higgins,* 6 Grat. 120. This lien is a legal lien, born alone of
the judgment, not of an execution, a lien independent of any ex-
ecution, the only efficacy of an execution being to keep it alive.
If it is capable of execution, or may be revived by *sci fa,* the lien
may be enforced on land in equity, not because of an execution,
but without execution, the lien of the judgment on the land
being one thing, the lien of an execution on personalty being
another thing—just as distinct from each other as is the per-
sonal debt of a note secured by deed of trust on land and the lien
of that deed on the land. 2 Minor Ins. 314. Who will deny that
a suit in equity might be instituted without any execution at

all if the judgment is not barred? Until the late statute requir-
ing the issue of an execution preliminary to a chancery suit upon
a judgment, such chancery suit could have been maintained
without any execution. *Marling* v. *Robrecht,* 13 W. Va. 440,
and now under Code 1899, chapter 139, section 7, surely such
chancery suit may be brought without such execution upon a
judgment two years old. *Dunfee* v. *Childs,* 45 W. Va. 156.
These considerations supplement the argument that the lien of
a judgment is separate from and independent of any execution,
and that that lien rests on the judgment alone. Notwithstanding
death of parties, such suit may be brought in the name of their
personal representatives, even though the judgment be suspended
by death. The chancery suit gives the representative parties
opportunity to make any defense. This is so as to the original
parties, their personal representatives or heirs, and why may
not a suit be brought without execution against subsequent pur-
chasers with notice? They merely stand in the shoes of their
vendor and can be sued without execution, and in the chancery
suit make their full defense. Why make them parties to the
*sci fa?* They could plead nothing against an award of execution
except payment or release, something transpiring since the judg-
ment. 1 Black, Judgments, s. 494; *May* v. *Bank,* 2 Rob. 56;
Note to *Frierson* v. *Harris,* 94 Am. Dec. 240. They can make
that defense of payment, release or set-off, or other subsequent
matter arising since the original judgment in the chancery suit;
and whilst the original judgment would be *res adjudicata* upon
them, the award of execution upon a *sci fa* would not estop them
as *res judicata* from making any defense against the chancery
suit to enforce the lien which the judgment debtor himself could
make, because though those purchasers are privies in estate with
the judgment debtor, yet the proceedings on the *sci fa* do not bar
them of such defense, for the reason that a privy in estate is not
bound by a judgment or decree against him from whom he
derives his estate, after he derived it, merely because of such
privity. *Bensemer* v. *Fell,* 35 W. Va. 15, pt. 4 of syllabus.

As stated above, the judgment may be in a state of suspension
so far as execution is concerned, but alive and enforceable in
equity on land without revival, because it is not the execution,
but the judgment, that affects the land. If we are told that the
*scire facias* does affect the land because it keeps alive the judg-
ment, I reply that the same argument may be made as to a second

execution, which surely could go without notice to terre tenants. And I reply further that we never have in the Virginias made heirs parties to writs of *scire facias* to revive money judgments, though on judgments or decrees for the recovery of land, where a writ of *habere facias possessionem* must issue, as in ejectment, there should be a revival against the heirs, because that writ operates directly on the land. When the mode of enforcing money judgments against land was by *elegit,* which was a writ of execution operative of its own force upon the land, a *scire facias* went against the heir and terre tenant; but even then the *sci fa* might go against the heir alone. 2 Minor Ins. 206; 1 Lomax Dig. 385. Since the abolition of *elegit,* and the substitution for it by express statute of a lien by the judgment on land, the enforcement of that judgment by a suit in equity, to which the terre tenant must be a party, and in which he can have full defense, there is in practice no such thing as a revival of a judgment by *sci fa* against heirs or terre tenants. They are brought into chancery to answer the legal lien of the judgment, not an execution. For a time there were two remedies to enforce a judgment against land, *elegit* and a suit in equity. Code 1849 and 1860, chapter 186, sections 6, 9; chapter 187, section 2. While those two remedies were existent the creditor could resort to either. *Borst* v. *Nalle,* 28 Grat. 430. In case of death the creditor had to revive if he desired to proceed by *elegit;* whereas, if he desired to proceed by a chancery suit to enforce the lien of his judgment, he could do so without revival. This shows the execution and the judgment are separate and distinct.

Another defense in this chancery suit is, that the judgment, so called, upon the *scire facias* is void and no lien. This defense is based on the theory that the order upon the *scire facias* is an original judgment, and not, as it should be, a mere revival and award of execution, because the law is that a *scire facias* is a continuation of the same suit, a process in cases of suspension of execution from dormancy of the judgment by death or other cause, to have an award of execution in the name of a new party, and not to try the matter over again, and if the court go beyond this and render an original judgment, as in an original action, it exceeds its jurisdiction proper upon such a writ, and its judgment is void. Hogg's Plead. & Forms (2 Ed.) 508; 2 Barton L. Prac. 1024; 1 Black, Judgm. 498; *Lavell* v. *McCurdy,* 77 Va. 763; *Wade* v. *Handcock,* 76 *Id.* 620.

As I stated in *Crumlish* v. *Central Improv. Co.,* 38 W. Va. p. 397, I doubt whether such a judgment would be void, though it might be erroneous. If it awarded execution, the balance would be surplusage. My idea is that spoken in 19 Ency. Pl. & Prac. 291, that "the proceedings upon such a writ of *scire facias* are the same as in the original action, but it is not necessary that there should be any other judgment than the usual one in *scire facias,* namely, an award of execution." This conveys the idea that it is not void, and therefore I do not think that consideration would prevent the order made on the *scire facias* from having the legal effect to keep alive the judgment, even if that order were obnoxious to the criticism that it is an original decree, and not mere revival and award of execution. This order recites that Franklin Maxwell had obtained a decree against Leeson for one thousand seven hundred and fifty-seven dollars and fifty cents, with interest from the 24th day of August, 1885, and costs, and that one execution had been issued and been returned unsatisfied, and that Franklin Maxwell had died, and W. Brent Maxwell had been appointed administrator, and then reads, "It is ordered that the said decree be revived in the name of W. Brent Maxwell, administrator of Franklin Maxwell, deceased, against the said Leroy Leeson for nine hundred and ten dollars and fifty cents, the unpaid balance of the decree, with interest thereon from the 21st day of March, 1895, and the costs of the original decre and the costs of this revival, except an attorney's fee, and that the plaintiff have leave to sue out execution for the same." Now, this is only an order for revival and execution, not a new decree of recovery, because it shows that it is based on the original decree. There is no decretal langauge in it found in original decrees, as that Leroy Leeson "do pay." True, the sum for which execution as awarded is different, being less, from the original decree. This does not aggrieve Leeson or the terre tenants, the lessening is for their benefit. But the legal answer to this objection is that the order shows on its face that the original decree had been reduced by payments, and as the law allows a defendant to a writ of *sci fa* to plead payment of the judgment, the inevitable result, in case of total payment, would be a dismissal of the *sci fa,* and in case of partial payment an award of execution for a reduced sum. We must infer that the plaintiff admitted certain partial payments and asked execution only for a balance. That payment can be

pleaded to a *scire facias* is well settled. *May* v. *Bank,* 2 Rob. 56; *Lauer* v. *Kelner,* 42 Am. St. R. 833; 2 Barton Law Prac. 1036; 1 Black, Judgments, s. 494. I apprehend that execution would go upon the judgment on the *scire facias,* and that any objection of variance from the original judgment would be met by the record of the *scire facias* proceeding; or, what would be more technically regular, let the *fi. fa.* recite the original judgment and also that on the *scire facias,* and thus account for such variance, and also limit the levy to the reduced amount. *Richardson* v. *McDougal,* 19 Wend. 80; 94 Am. Dec. 246; *Hall* v. *Clagett,* 63 Md. 58; *Wright* v. *Ryland,* 92 Md. 645.

The result is that we reverse the decree of the 28th day of November, 1900, overrule the demurrer to the bill, and remand the cause with leave to the defendants to answer the bill and for further proceedings according to the principles governing courts of equity.

*Reversed.*