*Pittsburg,*
*Friday,*
September
18th.

## Shortz *against* Quigley.

### In Error.

A bill of
exceptions
does not lie
to the opi-
nion of the
Court in re-
ceiving or
rejecting
testimony
upon a mo-
tion for sum-
mary relief.

THIS cause came before the court on a writ of error to the Common Pleas of *Crawford* county. A motion was made to the Common Pleas on behalf of *Shortz* the defendant below, *to open a judgment* entered against him by *Quigley*, on a bond with warrant dated 4th *December* 1800, conditioned for payment of 133 dollars 33 cents on the 15th *October* 1801. The judgment was entered as of *October* term 1803.

On this motion it appeared by evidence given to the court below, that by articles of agreement dated 14th *August* 1800,

*Quigley* contracted to sell to *Shortz* a tract of land for which he was to give him a good deed, conveying the land free from all incumbrances; and *Shortz* was to give a mortgage for the unpaid part of the purchase money. *Shortz* having paid part of the purchase money, a second agreement was made on the 4th *December* 1800, by which, after reciting that *Shortz* had paid part and given bonds for the residue of the purchase money, *Quigley* engaged to convey by good and sufficient deed, clear of incumbrance, by the 15th *October* 1801; in default thereof he was to refund the money he had received, and the bonds of *Shortz*, upon one of which the judgment in question was entered, were to be void. *Quigley* did not convey by the 15th *October* 1801; but on the 23d *March* 1803, he procured at his own expense a patent to be issued to *Shortz*, and on the 27th *July* 1803 he executed a release to him. The patent and release were tendered to *Shortz* who refused to accept them, although he was in possession of the land, and remained so at the time of the motion.

After this evidence had been given to the court, the counsel of *Shortz* offered to prove that *Quigley's* title was founded on an actual settlement of the land under the act of 3d *April* 1792; and that the settlement, improvement, and residence, not having been completed according to that act, his title was defective, notwithstanding the issuing of the patent. The court refused to hear this evidence, or to open the judgment; on which the counsel of *Shortz* tendered a bill of exceptions, to which the court affixed their seals.

*A. W. Foster*, and *S. B. Foster* for the plaintiff in error, contended that on a motion to open a judgment, the court was bound to receive the same evidence that would be competent upon a trial by jury; and that for any error in opinion in receiving or rejecting testimony upon such a motion, a bill of exceptions might be tendered. In this case the plaintiff in error had no other remedy for an obvious injury. There was nothing in the statute against it, and although the motion was to the discretion of the Court below, it was to a sound discretion influenced and governed by the rules of law. The ground of the motion was this: that the articles of agreement executed by *Quigley* on the 4th *December* 1800, were in fact a part of the condition of the bond executed by *Shortz* on the same day. That by those articles the bond was void upon an event which had occurred since the date, and which the parties originally agreed should have that

*1807.*

SHORTZ
*v.*
QUIGLEY.

1807.

SHORTZ

*v.*

QUIGLEY.

effect if it did occur, namely, if a certain time elapsed before *Quigley* made *Shortz* a good title. *Shortz* wished to shew that *Quigley* never had made such a title, and never could make it, notwithstanding the patent; that is, he wanted to shew the true meaning of the condition, which under existing circumstances, avoided the bond; and of course proved that the judgment was erroneous. 1 *Esp. Digest.* 248. 345. The evidence, though parol, was perfectly competent by all the decisions in *Pennsylvania. Field for the use of Oxley* v. *Biddle.* (a) The patent was merely presumptive evidence of title.

*Baldwin* for defendant in error, said that it was an attempt on the part of *Shortz* to keep the land without paying for it; inasmuch as a claim adverse to that of these parties was never heard of; so that the plaintiff in error had very little equity. But at all events, the case presented by the bill of exceptions was out of the question; for a bill was never before thought of being tendered for refusing to hear evidence on a motion to the court. Lord *Coke* says that the exception extends " not only to all " pleas dilatory and peremptory &c. to prayers to be received, " oyer of any record or deed, and the like, but to all challenges " of any jurors, and any material evidence given to any *jury*, " which by the court is overruled." 2 *Inst.* 427. But when the matter was proposed to the court alone; they might hear what evidence they pleased. There would otherwise be no end to delay. As to the judgment itself, there was no error in it, it was entered under a valid power, and not until the title had been tendered.

TILGHMAN C. J. after stating the case, proceeded as follows: It is first to be considered whether there is any error in the entering the judgment. It appears there is not. It was regularly entered in pursuance of a warrant of attorney. The motion to open the judgment was an appeal to the court to exercise a summary jurisdiction on principles of equity. In hearing these motions, courts are not tied down to those strict rules of evidence which govern them in trials by jury; because it is presumed that their knowledge of the law prevents their being carried away by the weight of testimony not strictly legal. I have never heard it supposed that a bill of exceptions lies to the court's opinion, in receiving or rejecting testimony upon motions for summary relief. The statute of 13 *Ed.* 1. on which

(a) 2 *Dall.* 171.

bills of exceptions are founded, has not been construed to extend to such cases. If it did, the delay of justice would be infinite. Every motion however trifling that was made in the course of a suit, would be the subject of a writ of error. I consider the point as too well settled to need discussion.

The strength of *Shortz's* case consists in this; that by the agreement of 4th *December* 1800, the bond on which judgment was entered in this case, was to be considered as void, unless *Quigley* conveyed the land by 15th *October* 1801. Although this is introduced into the record, yet being a distinct paper from the bond on which judgment was entered, this Court at the same time that they consider it, must consider a number of other circumstances, particularly that *Shortz* entered on the land, and still holds it. I am by no means satisfied that on a writ of error we are at liberty to enter into those equitable circumstances, which might induce the Court of Common Pleas to give an opinion one way or the other. But I do not think it necessary to express any opinion on that point, and I desire it be understood that I do not. Supposing for argument's sake, that we have a right to decide on the whole merits as they appear on the record, I see no reason for reversing the judgment, because it appears that *Shortz* if injured, is not without remedy. He may have his action on some of the writings which have passed between him and *Quigley*, and recover such damages as a jury shall think he has sustained. This being the case, and the real equity of the matter appearing very doubtful on the record, I am of opinion that there is no cause for reversing the judgment of the court below.

YEATES J. I have no hesitation in saying, that if I had been on the bench of the Common Pleas of *Crawford* county, I would have given my voice that the defendant below should have had a hearing of his cause before a jury, upon the facts disclosed to us on this argument. They would be the legal and and constitutional judges to ascertain whether any substantial damages had been sustained by reason of the plaintiff's not having made the title by the 15th *October* 1801. But even as matters now stand, *Shortz* has a full and complete remedy in an action founded on the contract of the 4th *December* 1800, if he has been in truth injured by the delay of *Quigley*. Where compensation for the delay may be made in damages, a court

1807.

SHORTZ
*v.*
QUIGLEY.

of equity would not on that ground alone decree it to be a for-feiture. A rigid adherence to the letter of the second agreement, in saying that it annuls the first, and that *Quigley* should repay the six hundred dollars and interest, and cancel the other bonds, would be the exaction of the pound of flesh by a *Shylock*, and the enforcing of a hard and unconscientious bargain, at which the feelings of every honest mind would revolt. *Shortz's* counsel profess not to go so far.

But these facts are disclosed to us in the bill of exceptions which comes up with the writ of error; and this necessarily introduces the preliminary question, whether such bill could legally be taken in the present instance. That a writ of error would lie on the final judgment of an inferior jurisdiction, there can be no doubt; but that for every order of the court, whether before or after judgment, a bill of exceptions might be tendered, I utterly deny. It is most generally taken under the statute of *Westm.* 2. on the trial of an issue by a jury; but it will not lie upon every opinion of the court delivered in the progress of the cause, as in discharging on common bail, or directing the *quantum* of bail. Suppose the Court of Common Pleas should order on the trial of an action, under circumstances of the most peculiar hardship and seeming injustice, or postpone it under the like circumstances, should refuse to discharge a freeholder from his arrest, or to set aside an execution, it cannot be pretended that these and such like interlocutory decisions would be good grounds for tendering bills of exceptions. The law confides the exclusive order and direction in such cases to the legal discretion and judgment of the court, having jurisdiction over the subject matter; and courts of error will not deem themselves at liberty to review the same. I remember one instance wherein the propriety of dissolving a foreign attachment and of sustaining a domestic attachment in *Cumberland* county was attempted to be questioned in the Supreme Court on a writ of error, but was refused in bank, though the facts had been stated by consent on the record.

If the law does not support the bill of exceptions, the ground of complaint of the plaintiff in error fails him; and there being no error in the record, properly so called, the judgment must of course be affirmed.

SMITH J. and BRACKENRIDGE J. concurred with the Chief Justice.

Judgment affirmed.