[PHILADELPHIA, JANUARY 23, 1832.]

## RIGHTER and another *against* RITTENHOUSE.

Rawle.
3r 273
f193 173

3r   273
4130 5432

### IN ERROR.

A *fi. fa.* issued by the consent of the defendant after the expiration of a year and a day from the date of the judgment, and levied upon land owned by him when the judgment was entered, and upon which it continued to be a lien from its date until the levy, but which was conveyed by him within the year and a day, is regular, as against his alienee; there being no allegation or pretence by the party complaining, that any defence could have been made, if instead of an execution a *sci. fa.* had been issued.

Such assent need not appear on the record or even be in writing, and it may be proved by the evidence of the defendant himself.

As long as the defendant in a judgment is alive, a *sci. fa. quare executio non* may be served on him alone, without notice to terre-tenants, where there are any. And in the event of the defendant's death, a *sci. fa.* is to be served on his executors or administrators.

If terre-tenants, whose interests are at stake, know of any defence, the court, upon an application made by them in due time, will permit them to make it.

This court cannot, on a writ of error, judge of the regularity of an execution issued in the court below, where the question involves matters of fact, which do not appear on the record.

WRIT of error to the District Court for the city and county of Philadelphia. The defendant in error, *Jacob Rittenhouse*, was plaintiff below, and the plaintiffs in error, *John Righter* and *Elizabeth Margaret Hellerman*, defendants.

The facts of the case were these:—

*John Righter*, one of the plaintiffs in error, on the 30th *March*, 1820, gave a bond with warrant of attorney to confess judgment to *Jacob Rittenhouse*, the defendant in error. The bond was conditioned for the payment of three hundred dollars on the 30th *March*, 1821. Judgment was entered on the bond by *Rittenhouse* on the 10th *April*, 1820.

By deed bearing date, 20th *July*, 1820, *Righter* conveyed the land, in reference to which the present controversy arose, to *Henry S. Wunder*, with special warranty, for eight hundred dollars, a receipt for the payment of which was annexed to the deed.

On the 10th *October*, 1820, *Henry S. Wunder* conveyed the same land to *Jacob Hellerman*, since deceased, (the son of one of the plaintiffs in error,) by deed with special warranty, for eight hundred dollars, a receipt for the payment of which was annexed to the deed. This deed was recorded 27th *March*, 1822.

*Rittenhouse* issued a *fi. fa.* on his judgment, returnable to *September* term, 1823, which the sheriff returned "*Tarde venit.*" An alias *fi. fa.* was then issued, returnable to the following *December* term,

(Righter and another *v.* Rittenhouse.)

and under this writ the premises in question were levied upon and condemned.

A writ of *venditioni exponas* issued to *March* term, 1824, and the premises were advertised for sale, but were not sold. To *September* term, 1826, an *alias venditioni exponas* issued, under which the premises were sold.

At *December* term, 1826, a rule to show cause why the execution and proceedings thereon should not be set aside, was obtained by the plaintiffs in error in the District Court.

Upon the argument of this rule, several depositions were read, among which was one made by *John Righter*, one of the plaintiffs in error, by which it was, among other things, attempted to be proved, that *Righter*, after the deeds to *Wunder* and *Hellerman* had been executed, had authorised the proceedings, which afterwards took place. The admission of this deposition was objected to by the plaintiffs in error, but the court overruled the objection, and confirmed the execution and the proceedings thereon; upon which this writ of error was sued out.

The following errors were assigned in the proceedings of the court below :—

1st. That the execution and proceedings thereon are irregular, and ought to be set aside.

2nd. That the deposition of *John Righter* was inadmissible, because he was an interested witness.

3d. That if the deposition was admissible, no agreement between him and *Rittenhouse* subsequent to the conveyance to *Jacob Hellerman*, can affect the premises, which had been conveyed to him.

*Bradford* and *T. Sergeant*, for the plaintiffs in error, argued, in the first place, in favour of the right of the terre-tenant *Hellerman*, to bring a writ of error. They contended, that whoever is a party in interest, has a right to redress on error, and *Hellerman* was clearly a party in interest, being in possession of the land sold, by title derived from *Righter* before *Rittenhouse's* execution issued. If she has not this remedy, she has no other except by an action against *Righter*, which may not prove of much value. That a writ of error may be supported in *England* by any party in interest, there is abundant authority to prove, and the law is certainly not more rigid in *Pennsylvania* where parties in interest are often permitted to come in through the equitable powers of the court, though the form of the action in strictness would exlude them. 2 *Tidd. Pr.* 1053. 9 *Vin.* 499. *Pl.* 49, 50. *Fritz* v. *Evans*, 13 *Serg. & Rawle*, 1. *Whitney* v. *Johnson*, 14 *Serg. & Rawle*, 328. *Hayward* v. *Williams*, *Style*, 254. *Id.* 280. *Anderson* v. *Neff*, 11 *Serg. & Rawle*, 208. *Voris* v. *Smith*, 13 *Serg. & Rawle*, 304. *Jackson* v. *Robins*, 16 *Johns. Rep.* 575. *Jackson* v. *Bartlett*, 8 *Johns. Rep.* 281. *Lessee of Heister* v. *Fortner*, 2 *Binn.* 40. *Heller* v. *Jones*, 4 *Binn.* 61. 65. *Brannan*

v. *Kelley,* 8 *Serg. & Rawle,* 480. *Steigleman* v. *Wolfersberger,* 5 *Serg. & Rawle,* 167. *Clippinger* v. *Miller,* 1 *Penn. Rep.* 72.

The proceedings in the court below were the subject of a writ of error.  The principle laid down in the books is, that it lies to whatever is matter of record, but whatever is out of the record rests in the discretion of the court below, and whatever is matter of pure discretion with the court below, cannot be reviewed in a court of error.  The error suggested here, is in the issuing of the execution, which is clearly matter of record.  The depositions and papers returned with it, which the defendant in error alleges to be matter in *pais,* came from himself in order to obtain relief, and were by him engrafted on the record.  The question whether a paper be a part of the record or not, does not depend on the nature of the paper, whether deposition, deed or otherwise, but on its being connected with the record so as to constitute a component part of it.  In *Duncan* v. *Harris,* 17 *Serg. & Rawle,* 436, an affidavit taken in the court below and brought up by writ of error as part of the record, was made the ground of the decision of this court.  There is a class of cases in which the power of the court below is absolute and beyond the reach of a writ of error, such as motions for a new trial, motions for relief, proceedings in domestic attachment, &c. but they consist of matters incidental to or disconnected with the regular course of judicial proceedings.  The case under consideration is one on the boundary line of the two classes, but certainly on the record side of the boundary. The court ought to be liberal in extending relief by writs of error as they have been favorites of the legislature and are essential to the due administration of justice.  They are objectionable only, where as in *Bailey* v. *Wagoner,* 17 *Serg. & Rawle,* 327, the party in the first instance resorts to this court for relief without previously applying to the court below, or by his laches waves the objection.  Neither of these reasons against a writ of error applies here, because application was made to the court below immediately after the sale, antecedently to which the party was not aggrieved.  This is a case of excessive hardship on the alienee, who has paid for the land, and if she cannot get redress here, the plaintiff in error must pay for it again.  If a *sci. fa.* had been issued, *Hellerman* might have been saved from payment to *Wunder.*  The doctrine of notice is greatly cherished, and the object of a *sci. fa.* is to give notice to all who have claims, to come in and defend.  Far from being an antiquated proceeding our legislature have shown a strong disposition to extend its operation. It is the favourite mode of giving notice.  The lien of a judgment, which was formerly indefinite, is now limited to five years, unless a *sci. fa.* issues within that period to revive it.  *Renninger* v. *Thompson,* 6 *Serg. & Rawle,* 1.  *Tidd. Pr.* 105.  *Bank of Penn.* v. *Latshaw,* 9 *Serg. & Rawle,* 9.  *M'Cullough* v. *Guetner,* 1 *Binn.* 214. *Ordroneaux* v. *Prady,* 6 *Serg. & Rawle,* 510.  *Woods* v. *Young,* 4 *Cranch* 238. *Wellock* v. *Cowan,* 16 *Serg. & Rawle,* 318.  *Robeson* v. *Whitesides,* 16 *Serg. & Rawle,* 320. *Kalbach* v. *Fisher,* 1 *Rawle,* 323.

(Righter and another *v.* Rittenhouse.)

2 *Arch. Pr.* 76. *Vastine* v. *Furey*, 2 *Serg. & Rawle*, 426. *Dunlop* v. *Speer*, 3 *Binn.* 172. *Lewis* v. *Smith*, 2 *Serg. & Rawle*, 142. *Reynolds* v. *Corp*, 3 *Caines Rep.* 267. *Vanderheyden* v. *Gardenier*, 9 *Johns. Rep.* 79. *Leiper* v. *Levis*, 15 *Serg. & Rawle*, 113.

As to the consent of *Righter* to the issuing of the execution, no act of his subsequent to the alienation, could affect the property conveyed to *Hellerman*. *Patton* v. *Goldsborough*, 9 *Serg. & Rawle*, 47. *Babb* v. *Clemson*, 12 *Serg. & Rawle*, 328. *Packer* v. *Gonzalus*, 1 *Serg. & Rawle*, 526. *Kean* v. *Ellmaker*, 7 *Serg. & Rawle*, 1.

*J. Randall* for the defendant in error, contended, that a writ of error would not lie to reverse an execution, where the question turns on facts not appearing on the record, or where the law and facts are blended. In such cases, it is purely a matter of discretion with the court below, and not the subject of review. In all cases, in which an execution has been reversed upon error, the facts on which the question arose, appeared on the record. The law on this subject is settled by repeated decisions. *Miller* v. *Spreeher*, 2 *Yeates*, 162. *Shortz* v. *Quigley*, 1 *Binn.* 222. *Wright* v. *Small*, 2 *Binn.* 93. *Lessee of M'Clemmons* v. *Graham*, 3 *Binn.* 88. *Burd* v. *Lessee of Dansdale*, 2 *Binn.* 89. *Mixell* v. *Bradford*, 2 *Serg. & Rawle*, 488. *Lewis* v. *Wallick*, 3 *Serg. & Rawle*, 412. *Gratz* v. *Phillips*, 14 *Serg. & Rawle*, 151. *Barnet* v. *Ihrie*, 1 *Rawle*, 53. *Kalbach* v. *Fisher*, 1 *Rawle*, 323. *Brooks* v. *Hunt*, 17 *Johns. Rep.* 484.

*Hellerman* is a stranger to this record, and no stranger can take out a writ of error. 9 *Vin.* 493. *Error K. pl.* 3. *pl.* 20 to 25. A terretenant cannot take out a writ of error. The remedy is by *audita querela. Wilson* v. *Watson*, 1 *Peters' C. C. Rep.* 272. 6 *Com. Dig.* 445. Notice to a terre-tenant of a *sci. fa. post annum et diem* is not necessary. It is the personal privilege of the defendant, which he may wave if he pleases, and he has done so here. The delay of execution was at his request. It was afterwards issued with his consent, and he, and all claiming under him, are estopped by his act. Notice to an alienee is only by virtue of our act of assembly, and is directed in reference to a particular object; the revival of a judgment, not for the purposes of execution, but to continue its lien after the expiration of five years. But there is no authority or practice to support the position that a *sci. fa. post annum et diem*, must be served on an alienee. Besides, as the deed from *Righter* had not been recorded, there was no necessity for a *sci. fa.* either under the stat. *Westminster* 2, or our act of assembly. No notice of the alienation by *Righter*, as whose property the land was sold by the sheriff, was traced to *Rittenhouse*, and therefore if a *sci. fa.* had issued, it could not have been served on the alienee. There is another ground on which the plaintiff in error is not entitled to redress at this time. If the right to it ever existed, it has been lost by neglect. The original *fi. fa.* issued in 1823, and the motion to set it aside was not made until 1826. This was too late. Third per-

sons who complain of irregularity in process as injurious to them, must apply for redress in due time. Here the party asserting the irregularity lies by for a long time, and then endeavours to deprive the defendant of the benefit of his judgment, subject to which the property was sold. The proceeds of the sale by the sheriff have long since been distributed among the judgment creditors, and no case can be adduced, in which after a year had elapsed from the time the money had been distributed, a writ of error has been sustained, and all the alleged irregularities of process overhauled. He cited *United States* v. *Harford,* 19 *Johns. Rep.* 173. *Long* v. *Martin,* 2 *Marsh. Rep.* 39. *Young* v. *Taylor,* 2 *Binn,* 228. 1 *Troubat & Haley's Practice,* 308. *Clark* v. *Israel,* 6 *Binn.* 391. *Seymour* v. *Greenville, Carth.* 283. 2 *Shower,* 235. 2 *Arch. Pr.* 78. 2 *Tidd. Pr.* 1004. *Snyder* v. *Zimmerman,* 1 *Penn. Rep.* 293. *Crosby* v. *Massey, Id.* 229. *Cochran* v. *Cummins,* 4 *Yeates,* 136. *Welch* v. *Murray, Id.* 196.

The opinion of the court was delivered by

KENNEDY, J.—The principal question which has arisen in this case is, whether a *fi. fa.* issued by the consent of the defendant, more than a year and a day after the date of the judgment, and levied upon land owned by him at the time of entering the judgment, upon which the judgment was and continued to be a lien from its date to the levy, but which was sold and conveyed by him within the year and a day, and before the issuing of the execution, is regular as against his alienee ?

At common law after a year and a day had elapsed from the date of the judgment in personal actions without execution being issued thereon by the plaintiff, a presumption arose that the defendant might be able to show that it was paid or discharged; and after that, without affording him an opportunity to do so, the plaintiff could not take out execution upon his judgment. To enforce the payment of it, he was compelled to bring an action of debt upon it, and to prosecute the same until he obtained a new judgment, upon which he might sue out execution. To avoid the delay that attended this course of proceeding, the statute of *Westminster,* 2d. [13 *Ed.* 1,] c. 45, gave a *scire facias* upon the judgment in such actions after a year and a day, requiring the defendant to show cause, if any he had, why the plaintiff should not have execution of his judgment. An execution sued out after the year and a day was never considered void, but voidable merely, and it would therefore seem, might be rendered regular and effectual by circumstances occurring before, at or subsequent to the time of suing it out. See *Vastine* v. *Fury,* 2 *Serg. & Rawle,* 426. *Patrick* v. *Johnson,* 3 *Lev.* 404. *Howard* v. *Pitt,* 1 *Salk.* 261, and in this last case 4 *Leo.* 197, was denied to be law. The reason of this principle of the common law was to protect the defendant against surprise and the payment of the judgment a second time, as it might be presumed from the delay of the plaintiff in issuing his execution, that the defendant had paid it once already, or

obtained a release : but where the defendant, to obtain favour and indulgence for himself, has, by request or entreaty, prevailed upon the plaintiff to delay suing out execution against him, or has by taking out a writ of error, or by filing a bill in equity, prevented the plaintiff from issuing execution within the year and a day, it is manifest that no such presumption can arise. See *Michell* v. *Cue*, 2 *Burr*. 660.     *United States* v. *Hanford*, 19 *Johns*. *Rep*. 173.     *Lessee of Dunlop* v. *Speer*, 3 *Binn*. 172.     Wherever then the reason of the rule, which forbade the issuing of the execution upon the judgment after the year and a day, ceases to exist, the rule itself becomes inapplicable, and the execution ought to be considered regular.    This deduction is in accordance with the cases just cited; and agreeably to them it is not necessary that an agreement or request of the defendant and consent of the plaintiff to delay execution beyond the year and a day in order to enable the plaintiff to issue it afterwards without a *sci. fa*. and revival, should be entered upon record or even reduced to writing.    A verbal agreement, or request and assent, will be sufficient, and if objection should be made by the defendant to the execution having been issued, the court will inquire into the truth of all such matters if they be alleged, and decide according to the facts as they shall find them to be.

In the case under the consideration of the court, the plaintiff in the judgment in the court below, delayed issuing execution upon it at the request of *Righter*, the defendant in the judgment.    This appears from the affidavit of *Righter* himself, and better or more conclusive evidence of the fact could not reasonably be asked for.    If the application to set aside the execution had been made by the defendant himself in the judgment, it will not admit of a doubt, but that the court below under the circumstances disclosed must have refused it.    As respects him at least the execution must be considered perfectly regular.

But it is contended, that because the defendant in the judgment, shortly after the entry of it, and before it became payable, sold and conveyed the land taken in execution for a fair price to *Henry S. Wunder*, who sold and conveyed the same to *Jacob Hellerman*, who died seised of it, and the application to set aside the execution was made by the heir of *Hellerman* to whom the land descended, no consent or request of *Righter*, the defendant in the judgment and execution, or act of his could authorise or make regular the issuing of the execution upon this judgment after the year and a day.    No authority has been referred to, which would seem to sustain this proposition.    Indeed I think that the course of proceeding in our courts to enforce the payment of judgments has generally been in opposition to it.    If a *scire facias quare executio non fieri debeat* had been issued upon this judgment and been served upon the defendant *alone*, it would have been sufficient to have entitled the plaintiff to a revival of his judgment, and under an execution issued thereon in case personal property of the defendant could not have been found, he could have

(Righter and another *v.* Rittenhouse.)

levied upon any lands, whether sold and conveyed by the defendant or not, upon which the original judgment was and still continued to be a lien; unless a satisfaction or release of the judgment could have been shown. It is not, however, alleged or pretended by the party complaining here, that any defence whatever existed or could have been made against an execution being issued, had a *scire facias* instead of the execution been issued at the same time.

In such a case as long as the defendant to the judgment is alive, I believe it has ever been considered sufficient throughout this state, in practice, to serve the writ of *sci. fa.* upon him alone, without notice to the terre-tenants where there are any. But if the doctrine contended for by the counsel of the terre-tenant in this case be true, a service of the *sci. fa.* upon the defendant *alone*, who made and could make no valid objection to the revival, would not or at least ought not to entitle the plaintiff to a revival of the judgment, and an execution upon it against land bound by it, but sold by the defendant, because such revival is only in effect an *admission* of the defendant, entered upon record to be sure, but we have already shown, that that does not vary the principle or the effect, that he had no good reason to show why the plaintiff should not have execution of his judgment. That admission, the defendant under the sanctity and obligation of an oath, has made in the present case. I have never known, I believe, an instance of a *sci. fa.* issued under the provisions of the statute of *Westminster*, 2d c. 45, without any view to continue the lien of the judgment as required under our act of assembly of the 4th of *April*, 1798, by the *original* plaintiff against the *original* defendant, in which it was served upon or notice given of it to any other than the defendant, when he was to be found. Neither the statute of *Westminster*, nor our act of assembly of 1705, which subjects lands to execution, and sale for the payment of the debts of the owner, requires it. As long as the parties to the judgment continue to be the same, and in full life, a service of such a *sci. fa.* upon the defendant upon record to the judgment has been uniformly, as I believe, deemed sufficient to obtain a revival and execution against *all* lands, upon which the original judgment was and still continues to be a lien. See *Young* v. *Taylor*, 2 *Binn.* 228. The defendant upon the record to the judgment *while living* is considered in law as the only defendant and party bound to pay it, when the judgment is against him in his own right, and no voluntary alienation by him of his lands bound by the judgment, or any part of them, can change his character of party as defendant: in short he cannot in this way divest himself of the character of defendant to the judgment, nor impart it to the vendée or alienee of his real estate. In case of the defendant's death, he of course ceases to be a party to the judgment, and of necessity some other must be substituted before execution can be had of it. The law in this event has designated the executors or administrators of the deceased as the persons to be substituted, which is done by issuing and serving upon them a writ of *scire facias*.

(Righter and another *v.* Rittenhouse.)

Here again, if we advert to the usual course of proceeding on the part of the creditors to obtain payment by suit out of the lands or real estate of the deceased debtor, we shall find it altogether at variance with the principle urged on behalf of the terre-tenant in this case. Lands in this state are not only assets for the payment of the debts of all grades of the deceased owner, but immediately upon his death, become bound for the payment of them, and they continue to be a lien upon the land for the space of seven years from the death of the debtor without any suit being brought, and if suit be commenced within that time, then without limitation. This lien is created by operation of law and quite as strong and effectual in every respect as the lien of a judgment, and the land of the deceased debtor in the hands of his heirs or their alienees may be taken in execution and sold upon a judgment obtained in a suit brought against the administrators or executors of the deceased, without any notice whatever to the heirs or their vendees in case they shall have sold the land. Nay, more, the administrators or executors may appear voluntarily in an amicable action instituted at any time, within seven years after the death of the debtor, by agreement between them and the creditor, and confess a judgment to him for the amount of his debt, without notice to the heirs or their vendees, upon which the creditor may issue execution, and sell as much of the land as shall be necessary to satisfy his judgment. All this is either expressly recognized or plainly inferible in and from what is said by this court in the case of *Fritz* v. *Evans*, 13 *Serg. & Rawle*, 14.

If terre-tenants have notice of suits or any proceeding in court, which may affect their interest, and know of any defence, upon application made by them to the court for that purpose in due time, they would certainly be permitted to make it. This appears from the case last cited. Under certain circumstances, such as where the plaintiff in the judgment became the purchaser at sheriff's sale of the land, and brought his ejectment to recover the possession of it from the terre-tenant, who had no previous opportunity afforded him of making defence against the justice of the plaintiff's debt, for which he obtained judgment, and sold the land, the terre-tenant would no doubt be permitted to set up the same defence against the plaintiff in the action of ejectment, which he might have done in case he had notice of the plaintiff's obtaining his original judgment. See *Nace* v. *Hollenback*, 1 *Serg. & Rawle*, 540. It is also proper to consider by whom it was that the law after a year and a day presumed, that the judgment might have been paid? certainly no other than the defendant upon the record, for he was the only person known to the law, who was bound to pay it, and if he said it was not paid or satisfied, all presumption of its being so vanished at once. This presumption was the only obstacle after the year and a day, that was thereby raised to the issuing of execution upon the judgment; and that being removed by the declaration of the defendant in the

(Righter and another *v.* Rittenhouse.)

case before the court, it follows that that the execution was perfectly regular and ought not for that cause to have been set aside.

All that I have said of issuing and serving the writ of *scire facias* must not be understood as applicable to writs of *scire facias* issued under our acts of assembly for the special purpose of continuing the lien of judgments beyond five years. The directions of the acts, in this behalf, ought to be followed in such cases. No question growing out of these acts, or any of them, is involved in this case; for it is admitted, and, indeed, cannot be denied, that the judgment, at the time the execution was issued, and the levy was made under it, was, and still continued to be, a lien upon the land taken in execution. This levy, according to the decisions of this court in the cases of *Young* v. *Taylor*, 2 *Binn.* 218, and *Commonwealth* v. *M'Kesson*, 13 *Serg. & Rawle*, 149, preserved and continued the lien of the judgment upon the land, until it was sold by the sheriff under the writ of *venditioni exponas.*

A question was also raised and argued in this case, whether this court, upon writ of error, could judge of the legality of issuing the execution after the year and a day, where it involved a matter of fact, which did not appear upon the record, that is, whether the delay in issuing it until after the year and a day, was in compliance with the request of the defendant, and out of indulgence to him, and had to be inquired of and ascertained by evidence *aliunde*. At one time, when it was adjudged that the year and a day invariably commenced running from the date of the judgment or the *cesset executio* actually entered upon the record, and that nothing short of such entry upon the record could make an execution regular, that was issued more than a year and a day after the date of the judgment, the execution would have been reversed or set aside upon writ of error, if it appeared to have been issued more than the year and a day after the judgment or stay of execution entered upon the record. For it was resolved in *Patrick v. Johnson*, 3 *Lev.* 404, already cited, that the execution sued out after the year was not void, but voidable only by *writ of error.* Or it might have been set aside on motion to the court from which it issued, as was done in *Sympson* v. *Gray and wife*, *Barnes*, 197. And since the idea that the execution, in order to be regular, must in all cases be issued within either a year and a day after the date of the judgment, or the expiration of the stay given and entered upon the record, has been exploded, and no longer to be considered law; and according to the law as it is now well settled on this point, it may be necessary for the court to inquire into matters of fact which do not appear upon the record, but are *de hors*, for the purpose of deciding whether the execution has been sued legally or not, it would seem as if a writ of error in such case would be of no avail, especially where, as in this case, the application was made to the court below to set aside the execution, and that court, after hearing the testimony adduced of the defendant's having requested all the delay that took place in issuing the execution, decided, as it was right it should do upon

(Righter and another *v.* Rittenhouse.)

the whole matter, consisting of questions of fact as well as of law. Whether the court below decided the law correctly or not in relation to this matter, must depend upon how they found the facts involved in it : and how is it possible for this court to review the decision of the court below as to the facts? It appears to me, that it cannot be done, because that court is deemed in law to be as competent to ascertain and decide upon the facts in such a case as this court. There are many summary proceedings and decisions in the courts below, which cannot be reached or touched upon writs of error. See *Miller & al.* v. *Spreeher*, 2 *Yeates,* 162. *Shortz* v. *Quigley*, 1 *Binn.* 222.

I am of opinion for these reasons, that *this court upon the writ of* error in this case, cannot revise, and correct or reverse the judgment of the court below, which refused to set aside the execution, even if it were so, that the court below had, from the evidence adduced, decided the facts differently from what this court might think, that they ought to have done.

The judgment and proceedings upon it in the court below are affirmed.