# Pennsylvania Railroad Company *versus* The First German Lutheran Congregation of Pittsburgh.

1. Railroad Co. *v.* Hiester, 8 Barr 445, is exceptional and tends to mislead as to the Supreme Court reviewing matters which are not part of the record.

2. The Court of Common Pleas has a supervisory power, to see that the proceedings of viewers assessing damages for property taken by the Pennsylvania Railroad Company, are regular.

3. It may set aside the report for gross errors or misconduct in the viewers, or for gross inadequacy or excessiveness in the damages.

4. No appeal is given to the Supreme Court; the judgment of the lower court is final, except for errors manifest on the record.

5. A citizen has no right to trial by jury, in proceedings by the state under her powers of eminent domain.

6. The Common Pleas has power to allow amendments to a petition for viewers to assess damages against railroad companies.

7. Where a lot is common both to a church building and its parsonage, the parsonage is within the Acts of April 23d and August 12th 1864, allowing the Pennsylvania Railroad Company to tunnel under "places of public worship," and providing for assessing the damages.

8. Damages are presumed to be assessed as of the date when they were done, when the contrary does not appear on the record.

CERTIORARI to the Court of Common Pleas of *Allegheny county*, to remove the proceedings for assessment of damages done by the Pennsylvania Railroad Company, in constructing a tunnel under the church property of The First German Evangelical Lutheran Congregation of Pittsburgh.

By the 11th section of the Act of April 13th 1846, Pamph. L. 319, incorporating the Pennsylvania Railroad Company, the company is prohibited from "passing through any burying-ground or place of public worship * * without consent of the owners thereof. By a supplement of April 23d 1864, Pamph. L. 535, it is enacted that the above prohibition shall not prevent the company from passing, by a tunnel, under a place of public worship, in constructing a branch to the railroad of the Western Transportation Company, with the proviso, that if, in the opinion of the viewers appointed to assess the damages, " any such place of public worship shall be so damaged by the construction of said tunnel as to render it unsafe to occupy the same for the purposes intended, then the said viewers shall assess the damages at the full cash value of the buildings and lot so occupied." By a further supplement of August 12th 1864, Pamph. L. 963, it is enacted, " that if the viewers should determine to appraise the value of the buildings, and the lot or lots connected therewith, * * the owners shall convey the same by deed in fee to the Pennsylvania Railroad Company, upon payment of the damages so awarded after a final confirmation by the court."

After the necessary preliminary proceedings,—on the petition of the church, October 29th 1864, viewers were appointed by the

[Pennsylvania Railroad Co. *v.* Lutheran Congregation.]

court to assess the damages "sustained, or which may be sustained," by reason of the company constructing a tunnel under the property of the church. The viewers appointed made a report assessing the damages, which was afterwards set aside. On the 29th of August 1865, the church was permitted to amend their petition against the objection of the company,—that "the original petition being defective, the petitioners were bound to pay the costs and begin *de novo*."

To the order issued on the amended petition the viewers reported, amongst other things :—

"That the petitioner is the owner in fee simple of a lot of ground, &c., whereon is erected a large brick church or building, which building was intended for the purpose of a place of public worship, and was so used and occupied by the aforesaid church, and there is also erected upon said lot of ground a two-storied brick dwelling-house or parsonage connected with said church building, and appropriated and used exclusively as a dwelling for the parson or minister of said church, and erected and intended for that purpose alone, and not leased or rented by the said owner thereof; and that said church and parsonage are so built and connected together upon said lot of ground as to be, in the opinion of the undersigned, an entirety, and incapable of being separated without great damage and prejudice to or spoiling both of said buildings.   *  *  *  *  *  *

"In the opinion of the viewers, the said lot of ground and buildings thereon erected, being so as aforesaid intended for a place of public worship and a dwelling or parsonage, and heretofore occupied (until damaged by the construction of said tunnel) as a place of public worship and parsonage, have been so damaged by the construction of the said tunnel as to render it unsafe to occupy the same for the purposes intended as aforesaid, and therefore they, the said viewers, assess the damages at the full cash value of the said buildings and lot so occupied, to wit, at the sum of $40,232.50.   *  *  *  *

"If the court shall be of opinion that the said dwelling or parsonage is not embraced within the terms or description 'place of public worship,' as defined or specified by the Act of Assembly of the 23d day of April 1864; then the undersigned viewers do report and find as follows, that is to say :—that the portion of said described lot of ground occupied as a place of public worship, whereon said church building is erected, has been so damaged by the construction of said tunnel, as to render it unsafe to occupy said building as a place of public worship, and therefore they assess the damages at the full cash value of said lot and buildings so occupied, to wit, at the sum of $35,007.50.   *   *

"The residue of the said lot of ground, being the portion thereof whereon said dwelling-house or parsonage is erected, and

intended and used for the purpose of a parsonage or dwelling as aforesaid, they value at the sum of $5225."

To this report the company filed thirteen exceptions, of which several related entirely to matters of fact, the others are as follows :—

1. After the setting aside of the first award in this case, the court erred in allowing an amended petition to be filed ; the proceeding should have commenced by the presentation of a new petition.

2. The amended petition upon which the viewers were appointed is defective in form, and omits to set forth the facts required by the company's charter and supplements, in order to procure the appointment of viewers.

7. That the viewers, in their report, have committed error in finding that the church and parsonage constitute " a place of public worship," the said parsonage being a distinct and separate building, its walls adjoining said church, not being built therewith, and its occupancy by the pastor of said congregation in no wise rendering it " a place of public worship."

8. That the said viewers exceeded their powers in finding facts in said report in the nature of a special verdict for the judgment of the court, as to whether said church and parsonage constitute " a place of public worship ;" and their award as to damages in separating said properties and assessing a particular sum upon each, and afterwards fixing an amount upon the whole, is contrary to law.

11. The viewers, by their report, have found the full cash value of the property on the      day of January 1866, not at the time the alleged permanent injury was done to said buildings, and in so doing wholly disregarded the evidence given before them ; that the said property was abandoned by said congregation about the last week of April 1865, and by reason thereof have found the amount at a period of time (viz., the date of said report) when the price of building materials, and the value of the lots upon which the buildings stand had greatly advanced, thereby unfairly selecting a point of time at which the greatest amount of damage could possibly be assessed.

12. The report should have shown at what period (if any) the buildings were rendered unsafe as a place of public worship by reason of the construction of the tunnel, and the full cash value *at that period*, and upon said amount, interest to the date of said award should have been found ; and its omission so to find renders it defective and invalid.

13. The congregation, from the time said property was vacated by them, in the latter part of April 1865, have constantly, by their trustees and counsel, declared the same unsafe as a place of public worship, and the report should have fixed that time as

[Pennsylvania Railroad Co. v. Lutheran Congregation.]

the period when (if ever) said buildings were in that condition, and set forth the full cash value thereof, and not as of the time of its finding, and by reason thereof is invalid.

The company asked that a commissioner be appointed to take evidence to sustain the exceptions, which was refused.

April 7th 1866, the exceptions were overruled, and the report confirmed by the court.

The errors assigned were: dismissing the thirteen exceptions; refusing to appoint a commissioner to prove the matter set forth in the exceptions; and confirming the report of the viewers.

*J. H. Hampton*, for plaintiff in error, cited O'Hara *v.* Penna. Railroad Co., 1 Casey 448; Penna. Railroad Co. *v.* Keiffer, 10 Harris 356; Acts of April 23d 1864, Pamph. L. 535, August 12th 1864, Pamph. L. 963; Commonwealth *v.* Erie and N. E. Railroad Co., 3 Casey 355; People *v.* The Saratoga Railroad Co., 15 Wend. 113; Newburyport Turnpike Co. *v.* Eastern Railroad Co., 23 Pick. 326; The King *v.* Pease, 4 B. & Ad. (24 E. C. L. R.) 30; Penna. Railroad Co. *v.* Hiester, 8 Barr 445; Troy and Boston Railroad Case, 13 Barb. 169; Schuylkill Nav. Co. *v.* Thoburn, 7 S. & R. 411; Watson *v.* Pitts. and Con. Railroad Co., 1 Wright 480; Searle *v.* Lack. and Bl. Railroad Co., 9 Casey 57.

*H. P. Mueller*, *T. Ewing* and *A. M. Brown*, for defendant in error, cited Berger *v.* Smull, 3 Wright 302; Harres *v.* Commonwealth, 11 Casey 416; Union Canal Co. *v.* Keiser, 7 Harris 134; Catharine and Frankstown Townships, 7 Casey 303; O. and P. Railroad Co. *v.* Bradford, 7 Harris 363; Penna. Railroad Co. *v.* Porter, 5 Casey 165; Boyd *v.* Negley, 4 Wright 377; Beates *v.* Retallick, 11 Harris 288; Griffith *v.* Eshelman, 4 Watts 55; Brooks *v.* Miller, 1 Grant 202; Everhart *v.* West Chester and P. Railroad Co., 4 Casey 339; Charles River Bridge *v.* The Warren Bridge, 11 Pet. 420; Packer *v.* Sunbury and Erie Railroad Co., 7 Harris 211; Commonwealth *v.* Erie and N. E. Railroad Co., 3 Casey 339; Bank of Penna. *v.* Commonwealth, 7 Harris 144; Bank of Easton *v.* Commonwealth, 10 Barr 442; Commonwealth *v.* Chathams, 14 Wright 181; Ohio and Pa. Railroad Co. *v.* Vicary, 1 Am. Law Reg. 121; Reitenbaugh *v.* Chest. Val. Railroad Co., 9 Harris 101; R. Railroad Co. *v.* Gesner, 8 Id. 240.

The opinion of the court was delivered, January 7th 1867, by

AGNEW, J.—The 1st assignment of error comprehends thirteen exceptions, which were all overruled by the court below. Most of them relate to the decision of the viewers upon the evidence and on the merits, and we are asked to consider them on the autho-

[Pennsylvania Railroad Co. *v.* Lutheran Congregation.]

rity of Railroad Co. *v.* Heister, 8 Barr 445. That case really does not support the doctrine sought to be drawn from it. It admits the rule to be as set forth in Allison *v.* The Delaware and Schuylkill Canal Co., 5 Whart. 482, that this court cannot examine into the merits of the report of viewers, and places its interference on the refusal of the court below to interfere under mistaken views of its own power. The whole tone of the opinion shows that the case is exceptional, and is unfortunate in its tendency to mislead in its seizing upon matters for interference which numerous cases before and since have held as constituting no part of the record. It will be serviceable, therefore, to collect and collate the cases which prove the extent of the revisory power of this court, first stating the position of the case before us. .

The charter of the Pennsylvania Railroad Company is contained in the Act of 13th April 1846, Pamph. L. 312, and its various supplements. The 12th section of this act and the 4th section of the supplement of 27th March 1848, Pamph. L. 274, confer the power of assessing the damages for property taken for the railroad upon viewers, whose report is made upon their own view, and is subject to the confirmation of the Court of Common Pleas. That court, therefore, holds a supervisory power over their proceedings, to see that they are regular and not contrary to law. It may set aside the report for gross errors or misconduct in the viewers, or for very gross inadequacy or excessiveness in the damages. But no appeal is given to this court and the judgment of the lower court is therefore final, except for errors or irregularities manifest upon the face of the record.

The power of the legislature to regulate the mode of assessing the damages in this way is clear. A railroad corporation is a creature of law, deriving its powers and privileges from the will of the legislature, and its charter is therefore the law of its birth and its growth. In taking private property for its road it exercises a part of the sovereign power of the state—that of eminent domain, which is uncontrolled by constitutional restriction, except that of making just compensation, the mode of ascertaining which is regulated by the law which gives the consent of the legislature to the taking. The corporation, itself the creature of the law, can therefore demand no trial or superior supervision withheld from it by the law. Indeed the right of trial by jury has never been held to belong to the citizen himself in proceedings by the state under her powers of eminent domain: McKinney *v.* Monongahela Nav. Co., 2 Harris 65.

The only supervision of this court in proceedings of this sort is that given by the general law conferring the authority to correct all and all manner of error of the justices, magistrates and courts of this Commonwealth in the process, proceedings, judgments and decrees, both in criminal and civil proceedings: Acts 22d April

3 P. F. SMITH—29

1722, § 13, and 16th June 1836, § 1; Brightly's Purd. 1861, p. 928, pl. 19. If anything can be considered settled it is that the power under these acts is confined to those matters which appear upon the face of the record, so that neither upon a writ of error nor upon a certiorari will this court travel out of the record to take up the evidence, oral or written, or the unrecorded determination of any inferior tribunal, unless when legally brought up by a bill of exceptions tacked to the record. And the bill of exceptions itself lies only in the cases given by express statute. It therefore does not lie to the opinion of the Common Pleas in receiving or rejecting testimony on a motion for summary relief: Shortz *v.* Quigley, 1 Binn. 222. It will not lie to a decision upon the right of counsel to conclude to the jury: Robeson *v.* Whitesides, 16 S. & R. 320. But what is more to the purpose, in Bell *v.* Bell, 9 Watts 47, the statute of Westminster 2d, giving the bill of exceptions to *any one impleaded,* &c., does not extend to an inquiry of damages executed at the bar of the court. See also Clymer *v.* Thomas, 7 S. & R. 180.

What is properly brought up by a certiorari is so fully stated by Gibson, J., in Union Canal Co. *v.* Keiser, 7 Harris 137, it may be given in his own language. The proceeding related to the assessment of damages for diverting water from a mill. "Being here on certiorari" (he says), "we are not at liberty to rejudge the judgment of the inquest; nor, if we had the power, have we the lights proper to do so. The Statute of Westminster 2d gives a bill of exceptions only in a trial according to the course of the common law, and there is no other means of putting evidence on a record. The testimony of the witnesses at the hearing of the inquest is consequently not before us; nor would depositions at the hearing of the exceptions to the inquisition have been so. No lawyer ever heard of sending up evidence given to freeholders on a plaint under the Landlord and Tenant Act. Under what seal would such evidence come, or by whom would it be certified? A certiorari lies not to an inquest, but to a court which has cognisance of exceptions to its inquisition; and the regularity of the proceedings is all that is examinable on it. Exceptions to the merits of the inquisition being addressed as they are like a motion for a new trial to the discretion of the judge, are determinable by him exclusively; for we would be incompetent to judge how far he ought to have believed the witnesses. The legitimate business of a court of error is not the trial of facts."

The extent of the revisory power of this court upon a certiorari, had been before fully stated by the same judge, when Chief Justice, in The Commonwealth *v.* Nathans, 5 Barr 124, a case of wife desertion removed from the Quarter Sessions. It was there held to be confined to the correction of irregularity in the proceedings and of excess in jurisdiction. See also Commonwealth *v.* Nathans,

2 Barr 144. The subject was again examined and fully discussed by Coulter, J., in Derry Overseers v. Brown, 1 Harris 390, a pauper case; and the same principle stated. These principles were applied to the following cases. The dissolution of a foreign attachment and discharge on bail: Miller v. Spreeher, 2 Yeates 162. The irregularity of an execution depending on extrinsic facts: Righter v. Rittenhouse, 3 Rawle 273. Contested election cases: Carpenter's Case, 2 Harris 486; Wallington v. Kneass, 3 Id. 313. Proceeding to alter the boundary of townships: Catharine and Frankstown Townships, 7 Casey 303. Proceeding of Quarter Sessions, on remission of forfeited recognisance: Harres v. Commonwealth, 11 Id. 416; Commonwealth v. Justice, 10 Id. 165. The incorporation of a borough: Sewickley Borough, 12 Id. 80. Proceeding upon a warrant of arrest under Non-imprisonment Act 1842: Berger v. Smull, 3 Wright 302.

The following cases are directly on the subject of railroad and canal damages. In Willing v. Baltimore and Ohio Railroad Co., 5 Whart. 460, it was held that the Court of Common Pleas had no power to re-examine the merits of the report of viewers, and set it aside for mere inadequacy or excessiveness of damages, under a law authorizing exceptions to the report to be heard, and the report affirmed or set aside by the court, as should be lawful and right. The authority of this case was doubted by Justice Rogers, in Railroad v. Heister, 8 Barr 453; but in Railroad v. Gesner, 8 Harris 240, the principle of Willing's Case, as to the damages, was reaffirmed. And before this, as early as 2 Watts 199, this court had decided, in Commonwealth v. McAllister, that it had not the means of judging of the truth or justice of this exception, even if it had the power to correct it. Then came the case of Allison v. Canal Co., 5 Whart. 482, affirming Commonwealth v. McAllister, and concluding with this authoritative ruling: " Such of the other exceptions as have been urged depend on depositions which we have determined, perhaps after some contrariety of decision in cases of this kind, to be inadmissible; and this is to be taken for the established practice of the court." The case of the Union Canal Company, already cited, sets forth the reasons of this rule, and shows, as remarked in Commonwealth v. McAllister, the court has no means of reaching questions not found in the record itself. This disposes of all the matters dehors the record set forth in the exceptions contained in the 1st assignment of error; and also of the matter contained in the 2d assignment of error.

This brings us to the exceptions involving matters contained in the record. There is nothing in the 1st and 2d exceptions, the power of amendment being clearly contained within the power over the proceedings conferred upon the Common Pleas.

The 7th and 8th exceptions raise the question whether that portion of the lot occupied by the parsonage fell within the power of the

viewers under the Acts of 23d April and 12th August 1864. It is urged that these laws apply only to a place of public worship, and not to a parsonage, which is but a dwelling for the convenience of the pastor. The general proposition is probably correct; but the case before us does not fall within it. The company would be a trespasser *ab initio*, if the case be one not within the power of the viewers. By the 11th section of the charter of 1846 the company was forbidden to pass through a dwelling-house as well as through a place of public worship and a burial-ground. The 3d section of the supplement of 1848 removed the prohibition from dwellings kept for rent, leaving it in force as to dwellings in the possession and occupancy of the owners. The enabling Act of 23d April 1864 extended to tunnels under a place of public worship only; leaving burying-grounds and homesteads in possession subject to the prohibition. No authority being given to tunnel under dwellings in possession of the owner, an injury by tunnelling beneath a dwelling rendering it unsafe for occupation would be an infringement of the rights reserved to the owner, and therefore protected from interference by the charter. In this instance the tunnel passes beneath a corner of the church, and under the whole width of the parsonage. If the parsonage be viewed as wholly independent of the church, the greatest portion of the tunnel was unlawfully located beneath it, and the argument which denies the power of the viewers over it forbids the entry of the company. But as we view the case, giving the Acts of 1864 their true interpretation, the entry of the company upon the lot common to both buildings is an undivided act, operating upon one and the same ownership, and compensated by the same proceeding. The second proviso of the Act of April 1864 requires the viewers, if they find that a place of public worship is so damaged by the tunnel as to render it unsafe to be occupied, to assess the damages at the *full value of the buildings and lot* so occupied. The supplement of August 1864 repeats this language, and adds *or lots connected therewith.* The appraisement was therefore not to be confined to the church or principal building, or that portion of the ground occupied by it, but embraced the lot and buildings. A congregation often is the owner of a lot embracing not only the church, but other buildings, such as the sexton's house, or a parsonage, or society or school rooms, which are mere appendages, and cannot be separated from the main building without inconvenience and perhaps great loss to the congregation. It would be manifestly unjust to the congregation whose church has to be abandoned, by reason of want of safety, to compel it to divide its lot and retain its mere church appendages. As in a partition, therefore, where division would prejudice or spoil the whole, the law required the viewers to value the lot and the buildings. In this case the report of the viewers finds

[Pennsylvania Railroad Co. *v.* Lutheran Congregation.]

" that the said church and parsonage are so built and connected together upon the said lot of ground as to be in the opinion of the undersigned an entirety, and incapable of being separated without great damage and prejudice to or spoiling both of said buildings."

The unity of the buildings is therefore a fact spread upon the record. This reasoning is reinforced by the Act of August 1864, which requires the conveyance of the lot or lots and buildings to the company on payment of the damages. The law, therefore, converts the proceeding into an involuntary sale on part of the owner, when it is found that the church is rendered unsafe. This want of safety operates as a dispossession, and justice and fair dealing demand that the property shall be treated as an entirety, and not disintegrated to the disadvantage of the owner. He must convey the whole, and the company must take and pay for the whole. The assessment of the whole was therefore proper, and so much of the report as varied the case to suit the view the court might take of the law becomes surplusage merely.

The 11th, 12th and 13th exceptions involve the time at which the damages should be assessed. There is nothing on the face of the report showing what period the viewers adopted as the time of the computation. The *finding* is, as of course, of the date when it was done ; but the presumption is that the viewers, in making this assessment, did so as of the proper legal period.

The contrary not appearing, the offer to show the time by evidence has already been shown to be outside of the record and not falling within the supervising power of this court. The law has given no appeal to us on the facts.

Finding no error in the record, the judgment is therefore affirmed.